JAMES CAROTHERS v. THE PHILADELPHIA CO.

APPEAL FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 10, 1887—Decided January 9, 1888.

The Philadelphia Company on its organization in 1884 became possessed of all the powers conferred upon the Empire Contract Company, incorporated under the act of March 22, 1871, P. L. (1873) 955, and all those possessed by the Pennsylvania Company, incorporated under the act of April 7, 1870, P. L. 1025, among which latter were: (1) To act as a contractor or builder, and as such to build, construct, maintain or manage for others. (2) To act as principal, and as such to build, construct, maintain or manage for itself. (3). To act as a purchaser, and as such to buy, maintain, or manage in its own name or otherwise "any work, public or private, which may tend or be designed to improve, increase, facilitate, or develop" trade, travel, transportation and conveyance of freight, live stock, passengers, or any other traffic, with power "to enter upon and occupy the lands of individuals or companies on making payment thereof or giving security according to law." Soon after its organization, said company engaged in the business of the production and supply of natural gas for fuel: Held,

1. That the special act incorporating the original company, while it may be improvident in some of its provisions, is nevertheless valid: Its title was a sufficient compliance with the constitution.

2. The grant of power therein is sufficiently comprehensive to authorize the Philadelphia Company to engage in the production, distribution and supply of natural gas.

3. The said company possessed the right of eminent domain under the provisions of the charter: If this be doubtful, it acquired such right under the act of March 29, 1885, P. L. 29.

4. The general system for the assessment of damages provided by the act of 1885, is applicable to companies engaged in the transportation of natural gas at and before its passage, as well as to those organized for that purpose under its provisions.

5. Whether a single corporation, organized under an "omnibus charter" may be permitted to gather up into one corporate hand all the powers and franchises of the commonwealth, not involved: per WILLIAMS, J.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 249 October Term 1887, Sup. Ct.; court below, No. 218 March Term 1886.

On January 7, 1886, James Carothers filed a bill in equity against the Philadelphia Company, George Westinghouse, Jr., T. A. Gillespie and J. R. McGinley, averring:

That plaintiff was seized in fee of a tract of land in Penn township containing 122 acres; that the defendants had entered thereon and intended to appropriate two strips through it, each six feet wide, for the purpose of laying therein pipe-lines for the transportation of natural gas; that the company defendant had filed a bond, but said bond had not yet been approved; that the charter of said company did not confer upon it the right of eminent domain for the conveyance of natural gas, and that if it did confer such right, it was unconstitutional and void, in that it attempted to authorize the taking of private property for private use, and, in that no mode was provided for the assessment of damages; that said company had not filed its written acceptance of the act of May 29, 1885, P. L. 29, and said act was not applicable to said company, and if it were, it did not confer upon it the right of eminent domain and was unconstitutional and void, in that it attempted to authorize the taking of private property for private use, and, in that it did not disclose in its title the purpose to grant the right of eminent domain to companies incorporated prior to its passage; and, that said company had not paid, or secured to be paid, the damages which the plaintiff would sustain by the appropriation of his property: Praying for an injunction and other relief.

The answer set forth, other than admissions: That the bond of defendant company was approved on January 9, 1886; that it was then, and for a long time had been, engaged in the business of transporting natural gas both on its own account and for various parties; that plaintiff had been secured, by the bond filed, in the payment of all damages to accrue by the appropriation of his property, and that George Westinghouse, T. A. Gillespie and J. R. McGinley were only interested as officers of said company.

A preliminary injunction having been granted, the cause was put at issue and referred to *Mr. Jacob H. Miller*, as examiner and master, whose report of his findings of fact and conclusions of law was as follows:

The master finds that the Philadelphia Company had its origin in the act of March 22, 1871, P. L. (1873), 955. " An act to incorporate the Empire Contract Company and define the powers thereof." The second section of said act provides as follows : " The said corporation shall also have, exercise and enjoy the same rights, powers, privileges, franchises and immunities as are conferred in and by an act of assembly of this commonwealth entitled 'An act to incorporate the Pennsylvania Company,' approved on the 7th day of April, 1870, as if the same were herein specially and particularly set forth."

The charter of the Empire Contract Company contained this provision, viz.: " That the stockholders of said company by and with the consent of the holders of at least two thirds of the shares of stock, be and are hereby authorized to change the name and title of the said company. . . . . which change shall be valid after the filing of a certificate in the office of the secretary of the commonwealth," etc. Pursuant to the authority thus given, the name of the company was several times changed and the last time to the Rio Grande Extension Company. While existing under the latter name, a suit was brought against the company by the commonwealth to recover taxes alleged to be overdue and unpaid. Defence was made upon the ground that the corporation was a railroad company, and consequently within the exemption of such companies from liability for the kind of taxes claimed. This defence failed, and upon judgment entered in favor of the commonwealth, an execution was issued and the property and franchises of the company sold by the sheriff of Dauphin county on March 11, 1884, to Mr. M. E. Olmsted, who purchased for himself and others. Thereupon a reorganization was had on May 24, 1884, and a certificate thereof filed under the new name of the Philadelphia Company.

As now existing this company possesses the powers granted by the act of March 22, 1871, incorporating the Empire Contract Company, in conjunction with the provisions of the act of April 8, 1861, P. L. 259, and its supplement of date May 25, 1878, P. L. 145, under which its present organization was had. These acts provide a mode for the reorganization of corporations whose franchises have been sold at judicial sale.

The master finds from the evidence, that the Philadelphia

Master's Report.

Company was organized under its present directory in July, 1884; that the pipe is laid through the property of the plaintiff, and is used for the purpose of conveying natural gas from the wells in Murraysville, Westmoreland county, to the customers of the company in Pittsburgh and its vicinity. The wells are owned by the company and they have also wells upon leased property.

The motive power that forces the gas through the pipes is the initial force with which it comes from the well. The gas is conveyed directly from the pipes to the customers. There were two other companies engaged in the business of piping and supplying gas to customers prior to July, 1884, viz.: The Penn Fuel and the Fuel Gas Company, and had been so for about one year prior to July, 1884. The Philadelphia Company purchased the entire capital stock of these companies, which was paid for partly in cash and partly in stock of the company purchasing. The gas from the wells of the Penn Fuel and Fuel Gas companies is run into the pipe-lines of the Philadelphia Company, along with other gas produced from other wells of the last named company, and from thence furnished to its customers.

The company has about 54,000 acres of gas territory leased, and some of it owned in fee simple, and 115 wells either completed or in process of drilling. Some of the Murraysville wells will yield from 300,000 to 1,000,000 feet per hour. From the Murraysville and Lyons Run districts the company has thirteen lines of pipe which, as they near the city of Pittsburgh, branch off so as to occupy the space most convenient for distributing to the streets and manufactories. There is one line of sixteen inches in diameter; others of ten inches, eight, and five and five eighths inches in diameter. The Philadelphia Company supplies directly 361 manufacturing establishments, thirty-four glass-houses in addition, and 5,716 dwellings, and through the Allegheny Heating Company ninety-two manufactories and 3,220 dwellings; at McKeesport 750 dwellings, and through the Tarentum Light and Heat Company 379, making a total of 10,552 manufactories and dwellings.

It is estimated the company furnishes two hundred millions of cubic feet of gas per day, equivalent to ten thousand tons

of coal a day.    The testimony shows that the introduction of
natural gas has cheapened fuel one half to the manufacturers.
It has added greatly to the convenience and comfort of all
consumers by freeing them from ashes, smoke and dirt. . . . .
The defendant company sells gas to independent companies,
who sell and distribute it to their customers; but there is no
evidence to show that it transports through its lines of pipe
the gas of other corporations or of individuals.

Has the Philadelphia Company the right of eminent do-
main?    If so, the grant must be found in its charter.    It must
be conferred for the purposes for which it proposes to exercise
it and the use must be a public one : Commonwealth v. Rail-
road Co., 27 Pa. 353; Lance's App., 55 Pa. 26; Finney v.
Somerville, 80 Pa. 65; Keeling v. Griffin, 56 Pa. 306; Edge-
wood R. Co.'s App., 79 Pa. 269.

The master is of opinion that the defendant company can
claim no rights under the act of May 29, 1885, for the reason
that it has not filed with the secretary of the commonwealth
its written acceptance of the act, and we have seen that it is
not incorporated under said act.

· We proceed then to an examination of the provisions of the
charter. . . . .

The Supreme Court in the case of Hespenheide's App., 32
P. L. J. 305, decided that under their charter, which is made
part of that of the Philadelphia Company, the Pennsylvania
Company has the right of eminent domain for railroad pur-
poses.    In that case the Pennsylvania Company, operating
under an assignment of lease of the Pittsburgh, Fort Wayne
& Chicago Railway, undertook to condemn lands for an addi-
tional track.    This was resisted by Hespenheide, the land-
owner.    The Pennsylvania Company contended that it had
the right to exercise the eminent domain of its lessor.    The
master and the court below both held that it had not such
right as lessee, but that it had the right by the terms of its
own charter.    Upon appeal to the Supreme Court the fol-
lowing errors, inter alia, were assigned :

"The finding that the Pennsylvania Company, independent
of its relation as lessee, has the right to exercise the powers of

eminent domain, and take the lands of plaintiff for railroad uses," and

"In not finding that, even as an independent corporation, the Pennsylvania Company is vested with rights to take private property for corporate uses, though as in this case they seek to take as the lessee of the P., Ft. W. & C. Ry., the plaintiff is entitled to a perpetual injunction."

The Supreme Court affirmed the finding of the court below, and said : "We need not discuss the question whether the right of eminent domain, which the P., Ft. W. & C. Ry. Co. admittedly possesses, passed by its lease to the Pennsylvania Railroad Company, and its assignees, the Pennsylvania Company, for the reason that the right of eminent domain is in terms conferred upon the latter company by its charter." §§ 1 and 4 are then cited by the court. It thus concludes its opinion : "In view of this clear grant of power by the legislature any further discussion of the case is unnecessary."

It is clear from the foregoing that the Philadelphia Company has the right of eminent domain for railroad purposes. But this is not the purpose for which it proposes to exercise the power. It is engaged in the transportation of natural gas by means of lines of pipe, in the manner, to the extent and for the purposes found by the master.

When we look at the powers granted by the act of April 7, 1870, incorporating the Pennsylvania Company, we find they are varied and extensive. In the case of International Nav. Co. v. Commonwealth, 104 Pa. 38, the Supreme Court considered a charter identical with that of the Philadelphia Company. The International Navigation Company was incorporated by an act of May 4, 1871, P. L. 565, which conferred upon it all the rights, powers and privileges conferred by an act to incorporate the Pennsylvania Company. In the year 1872, this company built a piece of railroad in Philadelphia, but subsequently sold it to another corporation. Afterwards it increased its capital stock and engaged in the running of a line of steamships between Philadelphia and New York and Antwerp, known as the " Anchor Line." Under these circumstances the commonwealth brought an action against the company to recover taxes claimed to be due by it as a transportation company. Defence was made upon the ground that it was a rail-

road company and therefore exempt from the tax claimed. The decision was to the contrary. The court in construing its charter, said: "Usually corporations are created in order to carry on a single, or at least a principal business or enterprise, and in such case they can readily be classified; but this company has survived from the days of special legislation with an 'omnibus' charter, under which it can do many things, from operating a railroad or constructing a steamship, to lending money to manufacturers or guaranteeing the notes of a firm. No doubt it can build a railroad, but it may build also 'any work or works, public or private, which may tend or be designed to improve, increase, facilitate or develop trade, travel, or the transportation and conveyance of freight, live stock, passengers and any other traffic, by land or water.'"

Without attempting to analyze the powers granted by the second section of the act of April 7, 1870, it seems reasonably certain that the company is empowered to do for itself, as principal, what it could contract with others to do. It can contract with other parties or corporations existing, or that might thereafter exist, "to build, maintain or manage in any way that said parties or any of them have authority to do, any work or works, public or private, which may tend or be designed to improve, increase, facilitate or develop trade, travel or the transportation and conveyance of freight, live stock, passengers and any other traffic by land or water, from or to any part of the United States or the territories thereof; . . . . . and also to purchase, erect, construct, maintain or conduct in its own name and for its own benefit, or otherwise, any such work, public or private, as they may by law be authorized to do."

The business in which the Philadelphia Company may engage for itself, may be public or it may be private, or it may be both. It may relate to trade or to travel or to transportation. The subjects of transportation may be freight, live stock, passengers, or any other traffic. The facts found show that the Philadelphia Company in carrying natural gas in pipes is exercising the functions of a transportation company. Natural gas is an article of merchandise and when transported is freight: Columbia Conduit Co. v. Commonwealth, 90 Pa. 308; W. Va. Transp. Co. v. Volcanic Oil and Coal Co., 5 W. Va. 382.

The right of eminent domain is, however, in connection with any public work which the company is authorized to conduct. Is the transportation and supply of natural gas a public use?

This is scarcely an open question in Pennsylvania, the legislature having declared it a public use. In the tenth section of the Natural Gas Act of 1885 it is enacted: "The transportation and supply of natural gas for public consumption is hereby declared to be a public use:" Cooley's Const. Lim., 528*. If the improvement tends to enlarge the resources, increase the industrial energies and promote the productive power of any considerable number of the community, the use is public: Talbot v. Hudson, 16 Gr. 417.

In Johnston's Appeal, 5 Cent. R. 564, it was contended that the act of 1885 was unconstitutional and void, in that it authorized the taking of private property for a private use, because it violated the constitution in not disclosing in its title the purpose of the legislature to grant to natural gas companies the right of eminent domain, and because the company seeking to exercise the right was not a corporation for the transportation and supply of natural gas for public consumption, but a mere private corporation for the marketing of its own commodities to and with a limited portion of the public. The decision of the court below was against the land-owner, which was affirmed by the Supreme Court.

This case is not only authority, but its reasoning is convincing and satisfactory, and applies as well to the case in hand as to charters granted under the act of May 29, 1885, provided the master is correct in his opinion and finding that the Philadelphia Company is a transportation company within the purview of the act of April 7, 1870, incorporating the Pennsylvania Company and which is made part of its charter. The case expressly decides that the transportation and supply of natural gas to the public, is a public use.

It is objected that the grant of eminent domain to the Philadelphia Company is unconstitutional: (1) Because no mention is made of it in the title to the act. This, however, is not necessary and in fact never forms a part of the title of incorporation acts. (2) That no mode of assessing damages is pointed

Master's Report.

out in the act for the land-owner whose property is taken. It is true that the charter of the defendant company contains no provision authorizing the land-owner to petition the court for the appointment of viewers to assess his damages suffered by the location and construction of the defendant's pipe lines, but it does comply with the provision of the present constitution relating to the taking and injury of private property by corporations or individuals invested with the right of eminent domain and requiring that just compensation shall be made : Article XVI., § 8. The language is : " Which compensation shall be paid or secured before such taking," etc. The words of the charter are : " On making payment therefor or giving security according to law."

In the case of Dimmick v. Brodhead, 75 Pa. 464, AGNEW, C. J., reviews the legislation of the commonwealth upon this subject and shows that the 2d section of the act of April 9, 1856, P. L. 288, remedied a defect in the act of 1849 by providing in case of the refusal of the owner to accept the tender, that notice of presenting the bond for filing in court should be given and making the bond subject to the approval of the Common Pleas. The bond stands as security as well for damages occasioned by the construction as the location of the road: Wadhams v. Railroad Co., 42 Pa. 303. On giving security the right of way vests in the company: Phil. & R. R. Co. v. Lawrence, 10 Phila. 604 ; Fries v. Railroad Co., 85 Pa. 73.

It is clear from these cases that if the land-owner fails to collect the damages assessed from the company taking the land, he can still bring his action of debt on the bond and recover his damages. If this were not so, in case the company taking the land should lose their title by judicial sale before proceedings to assess damages had been begun, the bond would be worthless. The master therefore is of opinion that the constitutional rights of the plaintiff in this case are protected by the filing and approval of the bond of the Philadelphia Company in an amount adequate in the judgment of the Court of Common Pleas, fully to compensate the plaintiff for damages and with sufficient sureties.

It is also objected that natural gas was unknown, or at least

Master's Report.

it was unused for heating purposes in 1870, and that the legislature must be presumed to have been legislating for things then in existence, and therefore cannot be supposed to have intended to grant the power to take private property for the purpose of laying pipes through it, for the transportation of natural gas. No testimony has been produced on this point and it is not made an issue by the pleadings, but the intent of the legislature must ordinarily be gathered from the words of the statute: Potter's Dwarris, 184; Commonwealth v. Penn. Ins. Co., 13 Pa. 166; Rich v. Keyser, 54 Pa. 86.

To repeat the words of the statute, the company may build "any work public or private which may tend or be designed, to improve, increase, facilitate or develop trade, travel or the transportation and conveyance of freight, live stock, passengers and any other traffic by land or water." Natural gas is freight. "Freight is that with which anything is fraught or laden for transportation:" Webster. Transportation by means of pipes is not new. Transporting and supplying natural gas is traffic in a most valuable product of nature. Natural gas is not new. The Philadelphia Company and other companies, firms and individuals have by means of pipes introduced. it into the manufactories and homes of the people.

For the foregoing reasons and following the authorities cited, as he understands them, the master finds:

1. That the Philadelphia Company is now, pursuant to a grant of power in its charter, a transportation company engaged in the carriage of natural gas.

2. That the business of transporting and supplying natural gas is a public use.

3. That for the conduct of such business it has the right of eminent domain by the terms of its charter.

These findings require that the master recommend that the bill of the plaintiff be dismissed, which is done accordingly.

Various exceptions to the report of the master filed by the plaintiff were overruled and on argument the court, STOWE, P. J., adopting the finding of law by the master, dismissed them and entered a decree dismissing the plaintiff's bill. The plaintiff thereupon took this appeal, assigning said decree as error.

*Mr. J. P. Hunter*, for the appellant:

1. The defendant company, though admitting that it had not availed itself of the provision in § 14, act of March 29, 1885, P. L. 29, by which it might file an acceptance of the act, nevertheless claimed that it enjoyed the right of eminent domain under § 10 of said act. But §§ 10 and 14 must be construed together, and the grant allowed in favor of those companies theretofore engaged in transporting natural gas, a construction rendered necessary by a reference to the circumstances attending the passage of the act: Emerson v. Commonwealth, 108 Pa. 111. The master ruled that the defendant company had not accepted the provisions of the act of 1885, in which ruling the defendant company acquiesced. And it might be further suggested that even if such right were granted, it would be in violation of the constitutional provision that the title must disclose the subject matter of the act.

2. Has the defendant the right of eminent domain for natural gas purposes by the terms of its charter? That which a company is authorized to do by its act of incorporation it may do; beyond that all its acts are illegal. And the power must be given by plain words or by necessary implication; all powers not given in this direct and unmistakable manner are withheld: Commonwealth v. Railroad Co., 27 Pa. 351; Penn. R. Co. v. Canal Commissioners, 21 Pa. 22; Perrine v. Railroad Co., 9 How. 184; Charles River Bridge Co. v. Bridge Co., 11 Pet. 544; Jackson v. Lamphire, 3 Pet. 287; United States v. Arredundo, 8 Pet. 738; Salem Mills v. Ropes, 6 Pick. 32. Corporations created for specific objects have no power to take and hold real estate for purposes wholly foreign to those objects: Sutton Parish v. Coal Co., 4 Pick. 240; Thatcher v. Bridge Co., 18 Pick. 501. Under its charter the defendant has two classes of powers: (1) those of a building or contract company and a company engaged in the business of managing the work of others; (2) the power of a principal to engage in any "such work, public or private, as they may by law be authorized to do." Within these classes is found no power to take land for natural gas purposes.

3. The eminent domain is the exercise of the sovereign power of the state, and its grant will not be presumed unless the intention can be clearly discovered in the act itself:

Thatcher v. Bridge Co., 18 Pick. 501; Perry v. Wilson, 7 Mass. 393; Freaksburg R. Co. v. Railroad Co., 2 Amer. R. C. 605; Lance's App., 55 Pa. 28; Sedgwick, St. & Const. L., 291–2; Dugan v. Bridge Co., 27 Pa. 303; Cleveland v. Railroad Co., 27 Pa. 380; Johnston v. Philadelphia, 60 Pa. 445; Morawetz, Corp., 323. We submit that it is the use of natural gas in which the public have an interest. The transportation is but an incident. Therefore, the defendant company carrying simply its own produce, its own gas, which it sells to its own customers, is different in every respect from a company, the business of which is the transportation of freight, passengers, etc.

4. The burden is upon the defendant company to show that the grant of eminent domain, for the use of natural gas, is within the meaning of the act of April 7, 1870, P. L. 1025, the powers conferred in which are given to defendant company by the act of March 22, 1871, P. L. (1873) 955. All laws must be executed according to the sense and meaning which they imported at the time of their passage; the grant must be expounded as the intent was at the time of the grant: Commonwealth v. Railroad Co., 27 Pa. 353; McKee v. Railroad Co., 2 Jones L. 190; Mildmay v. Standish, Cro. Eliz. 35; London v. Church, Hob. 303; Bridge Proprietors v. Hoboken Co., 2 Beas. 81; Mohawk R. R. Co. v. Railroad Co., 6 Paige 565. Natural gas as now utilized was not used and known when the charter of defendant company was granted, and judicial notice will be taken of the fact: Attorney General v. Telephone Co., L. R. 6 Q. B. 244; Emerson v. Commonwealth, 108 Pa. 111.

5. This court has ruled in Johnston's App., 5 Cent. R. 564, that the business of supplying natural gas by companies organized under the act of 1885, is a public use. But the companies so incorporated are created for that purpose, and are bound to supply gas to consumers, a burden not imposed on defendant company. Its business is not a public use within the meaning of the constitution. Private property can be taken under the right of eminent domain only for specified public uses, which the public have a legal right to enforce: Osbourne v. Hart, 24 Wis. 89; Whiting v. Railway Co., 9 Am. L. Reg. 156; People v. Salem, Idem 487; Ladlie v. Lang-

heim, 34 Ala. 311; Varick v. Smith, 5 Paige 159; Jones v. Tatham, 20 Pa. 398; Smedley v. Irwin, 51 Pa. 451; Jessup v. Loucks, 55 Pa. 361; Ervine's App., 16 Pa. 256; Norman v. Heist, 5 W. & S. 174; Finney v. Somerville, 80 Pa. 65; West River Bridge Co., 6 How. 546; King v. Russell, 6 B. & C. 566; King v. Ward, 4 Ad. & E. 384; Hays v. Risher, 32 Pa. 169; Bloodgood v. Railroad Co., 18 Wend. 60; Palairet's App., 67 Pa. 492. The Lateral Railroad act was sustained on special grounds: Keeling v. Griffin, 56 Pa. 305; Hays v. Risher, 32 Pa. 169; Palairet's App., supra; but the legislature cannot authorize the construction of a road to connect two coal properties, when such a road is not connected with a highway: Waddell's App., 84 Pa. 90. A grant of eminent domain can only be for a public use existing at the time of the grant: Edgewood Co.'s App., 79 Pa. 257.

6. But even if such power be granted, and it is a public use, the act is unconstitutional, because such purpose is not disclosed in the title of the act: Rogers v. Mf. Imp. Co., 109 Pa. 109; U. P. R. Co.'s App., 81* Pa. 94; Dorsey's App., 72 Pa. 192. Moreover, the act is unconstitutional because no mode is provided whereby the landowner may institute proceedings to recover compensation: Wood Railw., 639, 641 n.; Pittsburgh v. Scott, 1 Pa. 314; Gardner v. Newburgh, 2 Johns. Ch. 162; People v. Hagan, 6 Hill 361; Cooley, Const. Lim., 700; Dimmick v. Brodhead, 75 Pa. 465; Pierce, Rail., 162; Sharett's Road, 8 Pa. 91; Bradshaw v. Rodgers, 20 Johns. 106; People v. Nearing, 27 N. Y. 306; Eastman v. Amoskeag Co., 44 N. H. 160; Porham v. Justice, 9 Ga. 344; Watson v. Township, 21 Ohio 667; Mills, Em. D., § 128. Under the general railroad act of 1849, the authority to appoint viewers is limited to cases where land is taken for railroad purposes. In every other case when the proceedings for the appointment of viewers is under that act, there is an express legislative enactment providing therefor. And it is perfectly plain that the natural gas act of 1885 is only applicable to companies incorporated under or accepting it.

*Mr. John Dalzell*, for the appellee:

1. The powers of the Philadelphia Company as a principal may be accurately expressed by striking from § 2, of the act

of April 7, 1870, P. L. 1025, the phrase beginning with, "to contract with any person" and ending with "to do," and by striking out the middle paragraph. The section would then read thus: That the corporation hereby created shall have power . . . . . to build, construct, maintain or manage any work or works, public or private, which may tend or be designed to improve, increase, facilitate or develop trade, travel, or the transportation and conveyance of freight, live stock, passengers, and any other traffic by land or water, from or to any part of the United States or the territories thereof . . . . . (including also herein lines for telegraphic communication), and to aid, co-operate and unite with any other company, person or firm in so doing. Such, then, are the powers of the defendant company by express grant, needing no aid from implication.

2. Carrying natural gas (freight, merchandise, traffic) in pipe-lines is essentially performing the functions of a transportation company: Columbia Conduit Company v. Commonwealth, 90 Pa. 308; West Va. Transp. Co. v. Volcanic Oil & Coal Co., 5 W. Va. 382. Pipe-lines, as a means of transportation, are as old as artificial gas, and older still, reaching back to the first time when water was gathered and distributed in pipes. There can be nothing in the argument that the Philadelphia Company was not intended to be incorporated to deal in or carry natural gas. The key to the legislative intent is to be found only in the words of the grant, and they are broad enough to cover all that the company is now attempting to do. But even if it were a fact that a pipe-line had never been heard of when the Empire Contract Company was incorporated, still, if a pipe-line be a means of transportation, the construction and operation thereof would be within the express grant of power to the company: Navigation Co. v. Commonwealth, 104 Pa. 38. The words of a statute are the doors and windows through which to discern its meaning: Broom's Leg. M., 556; Rich v. Keyser, 54 Pa. 86; Potter's Dwarris, 184; Bradbury v. Wagenhorst, 54 Pa. 182; Commonwealth v. Insurance Co., 13 Pa. 166. It is only when an intent is not apparent from the letter, that construction may be resorted to: Scott v. Reid, 10 Pet. 524.

3. The defendant company by its charter, act of March 22, 1871, P. L. (1873) 955, is given the powers of the Pennsyl-

vania Company under the act of April 7, 1870, P. L. 1025, and the latter company, by § 4 thereof, has the right of eminent domain as this court has held: Hespenheide's App., 32 P. L. J. 305. But, if there could be any question as to this, it is set at rest by § 10, act of May 29, 1885, P. L. 29. At the date of this act, the defendant company was "engaged in the transportation and supply of natural gas." No other regularly incorporated company was. The existence and business of the defendant company was then well known. The section is general and inclusive in its terms. It says "any and all corporations that is or are now engaged," etc. It does not refer, as § 14 does, to corporations without proper incorporation, but to real corporations actually engaged in business.

4. The transportation and supply of natural gas is a public use, and it matters not that the gas is owned and sold by the transporting company itself. The power to exercise the right of eminent domain, where such right exists, may be conferred upon a corporation acting in its own interests and for the purpose of private gain: Bloomfield & Rochester N. Gas Co. v. Richardson, 63 Barb. 437. When the legislature has declared a public use, it will be conclusive, unless the contrary clearly appears: Cooley, Const. Lim., 528*, 536; Johnston's App., 5 Cent. R. 564.

5. But it is said that the grant of the eminent domain to the defendant company is unconstitutional: (1) Because no mention is made of it in the title of its act. That is unnecessary, as appears from an examination of the whole course of corporate legislation and an inspection of every railroad charter on our statute books. Besides, the ruling in Johnston's App., supra, is conclusive against the objection. (2) Because no mode of assessing damages is provided in the act. The argument is, that even if a power is plainly granted, it cannot be exercised because a mode of assessing damages is not provided. By its charter the company's right to enter upon and occupy lands is coupled with the provision, "on payment therefor, or giving security according to law," in which respect the charter comes fully up to the constitutional requirement: Art. XVI., § 8. An adequate bond of the defendant company has been filed and approved, and that matter is res adjudicata: Wadhams v. Railroad Co., 42 Pa. 303; the right of way has vested

in the company: P. & R. R. Co. v. Lawrence, 10 Phila. 604;
and a recovery may be had upon the bond without an assess-
ment of damages: Fries v. Railroad Co., 85 Pa. 73. More-
over, the authorities are ample now, to the effect that an action
on the case will lie: Penn. R. Co. v. Duncan, 111 Pa. 352;
Patent v. Railroad Co., 14 W. N. 545; s. c., 17 W. N. 199. It
is not indispensable that a mode of assessment should be pro-
vided: Bonaparte v. Railroad Co., Bald. 226.

6. Of course, from the grant of the right of eminent do-
main, there follows a legal obligation on the part of the com-
pany to furnish natural gas to all applicants with impartiality,
subject to reasonable rules and regulations. The acceptance
of the grant implies an obligation in favor of the public:
Morawetz, Corp., §§ 1116, 1129; Williams v. Mutual Gas Co.,
52 Mich. 502; Sheppard v. Milwaukie Gas Co., 6 Wis. 539;
New Orleans Gas Co. v. Paulding, 12 Rob. 378; Gas Light Co.
v. Calliday, 25 Md. 1.

OPINION, MR. JUSTICE WILLIAMS:

The plaintiff in the court below is the owner of a tract of
land. The defendant is a corporation claiming the right of
eminent domain and seeking by virtue thereof to enter upon
the plaintiff's land and lay under the soil, pipes for the trans-
portation of natural gas from its wells in Westmoreland
county to its customers in and about the city of Pittsburgh.
The plaintiff denies that the defendant possesses this right for
the purpose for which it is sought to exercise it, and asks the
court to restrain its exercise; alleging that the production,
transportation, and supply of natural gas is not among the
objects which the company has power to enter upon, either
under the provisions of the act of 1871, which created it, or
those of 1885, which provided for the incorporation and organ-
ization of natural gas companies.

The decision of this case makes it necessary, therefore, to
ascertain what powers were conferred upon this company by
the act of incorporation, and to what extent they have been
enlarged or diminished by the act of 1885. The act of March
22, 1871, incorporated the Empire Contract Company with
power to change its name by the action of its stockholders,
and then clothed it with "all the rights, powers, privileges,

franchises, and immunities " which had been given to the Pennsylvania Company by an act approved on April 7, 1870. Under this authority the Empire Contract Company was organized, began business, changed its name several times, and on March 11, 1884, was sold by the sheriff of Dauphin county on a judgment obtained by the commonwealth for unpaid taxes. The purchasers then proceeded in May, 1884, to reorganize the company under the name of the Philadelphia Company, in accordance with the act of 1878, and filed an acceptance of the provisions of the 16th article of the constitution as required by that act.

Upon its reorganization the Philadelphia Company possessed all the powers conferred directly by the act of incorporation, and all those possessed by the Pennsylvania Company under the act of April 7, 1870. Among the latter were the following:—

1. To act as a contractor or builder, and as such to build, construct, maintain or manage for others—

2. To act as principal, and as such to build, construct, maintain or manage for itself—

3. To act as a purchaser, and as such to buy, maintain, or manage in its own name or otherwise "any work or works public or private which may tend or be designed to improve, increase, facilitate, or develop" either of the following objects, viz.: (1) trade; (2) travel; (3) transportation and conveyance of (a) freight; (b) live stock; (c) passengers; (d) any other traffic, by land or water from or to any part of the United States or territories thereof. It was also invested with power to "enter upon and occupy the lands of individuals or companies on making payment therefor or giving security according to law."

Soon after its organization the Philadelphia Company turned its attention towards the production and supply of natural gas as a fuel, and in July, 1884, began its operations in the Murraysville field. These were conducted on a large scale, and the master finds that, prior to the taking of the testimony before him, the company had thirteen lines of gas pipes conveying gas to customers, were supplying about eleven thousand factories and dwellings with fuel equivalent to ten thousand tons of coal per day, and had an actual cash investment in the business of over eight millions of dollars.

If the company has the right to engage in this business under its act of incorporation, it has the right of eminent domain under the same act. If the act of incorporation does not authorize it, then, as to this business, it is a private association, and without the power to enter upon the plaintiff's lands. The master and the court below held that the company was authorized to enter in its corporate character upon this business, and rested their conclusion upon the proposition that gas is freight, and that conducting it through pipes from the wells to the consumers is the transportation of freight. But a transportation company provides simply the means for transportation of freight for customers at certain prices. This company produces a commodity which it takes to market and sells. The gas is produced at the wells. It is wanted at the mills and dwellings of the city. The pipe-lines laid by this company serve to convey the gas from its wells to its own customers, to whom it is sold and delivered. The transportation is incidental to the production and supply of the gas. The situation is precisely the same as in the case of illuminating gas, which is manufactured, stored, and conveyed by pipes to the places of consumption. The business is that of making and supplying gas for light. The transportation to the customer is incidental. The same is also true of water companies. They produce, store, and supply to customers, water. Transportation by means of pipes is the means of delivery, and is a mere incident of the business. The business of the Philadelphia company is, in our opinion, that of a fuel-gas company, viz.: the production and distribution of natural gas ; and the transportation of the gas is the necessary means of delivery to its customers and nothing more. Had it the power to engage in this business in 1884 ? It will be seen by our analysis of the grant in the act of incorporation that the company had the power to build, etc., any work, public or private, which "may tend or be designed to improve, increase, facilitate, or develop trade."

In the preamble to the act of 1885 the legislature declares that natural gas has become a "prime necessity for use as a fuel and otherwise in the development of trade." It thus applies to this business the very words employed in the act of incorporation to describe the powers of this company. It is,

moreover, part of the current history of the commonwealth that the discovery and use of natural gas has facilitated and cheapened and increased the production of manufactured articles of all descriptions, where heat is employed in the generation of steam or in the processes of manufacture. By cheapening and increasing production trade has been stimulated, facilitated, and developed wherever the natural gas has been made available as a fuel. We conclude, therefore, that the works by which the gas is produced from the earth, transported to the factories and dwellings of Pittsburgh, and then delivered to customers, are works that "tend and are designed to improve, increase, facilitate, and develop trade," and are therefore within the powers granted to this company. If so, the Philadelphia Company is rightfully engaged as a corporation in this business by virtue of its own charter.

The act of 1885 declares the transportation and supply of natural gas to be a public use, and, the days of special charters having gone by, provides by general law for "the incorporation and regulation of natural gas companies;" but does not diminish the powers of any corporation in existence by virtue of a special charter. This company having the right to engage in this business had by express words the right of eminent domain and could enter upon lands without the aid of the act of 1885. But it is objected that the act of incorporation did not provide the machinery by which the value of property taken or injured could be ascertained and a judgment obtained therefor; and for that reason it is urged that the grant of eminent domain cannot be sustained. The grant is in these words: "The company hereby created shall also have power to enter upon and occupy the lands of individuals or companies on making payment therefor, or giving security according to law, for the purpose of erecting," etc.

The proceedings to secure the adjustment of the damages were to be "according to law." Had the company built a railroad under this provision the general laws regulating the assessment of damages against railroad companies would have provided the mode of procedure. That they would have been applicable is very clear from the words of the act of 1849. This act provides that "whenever a special act of the general assembly shall hereafter be passed, authorizing the incorporation

of a railroad company," the manner of its organization, its powers, privileges, and obligations shall be as therein set forth, and damages for its entry upon lands shall be assessed in the manner pointed out. It furnished a system of procedure to be followed in all cases arising after its passage not specially provided for, and would have been applicable to this company if its undertaking had been to build a railroad. But the Philadelphia Company did not build a railroad. It entered upon the business of producing and supplying natural gas. The general laws regulating the exercise of the right of eminent domain and assessing damages therefor, did not contemplate an entry of this description and their provisions were not adapted to the assessment of the damages done by it.

It may be, therefore, as the plaintiff in error insists, that the landowner had no remedy under the act of incorporation except an action at law. If so, the act of 1885 has supplied what was lacking and given a general system for the assessment of damages applicable to all natural gas companies. In the tenth section, after the declaration that the transportation and supply of natural gas for public consumption is a public use, the legislature declares that " any and all corporations that is or are now, or shall hereafter be, engaged in such business shall have the right of eminent domain for the laying of pipe-lines for the transportation and distribution of natural gas." Then follow provisions regulating the exercise of the right and the proceedings for the assessment of the damages done thereby. These provisions are not limited in their application to corporations created under the act, but are general and apply to all " corporations that is or are now " engaged in the business, as well as to those that " shall hereafter be engaged " in it. Thus corporations then supplying gas and those to be so engaged by virtue of incorporation under the act are treated in the same manner.

This is in harmony with the circumstances that gave rise to the legislation of 1885, as well as with the general character of its provisions. The business of producing and supplying natural gas had assumed important proportions prior to 1885. Several companies, organized under the general laws providing for the incorporation of illuminating gas companies, were engaged in the business. This court had recently held that

such charters conferred no authority to transport or to deal in natural gas as a fuel. The precise point in controversy was the authority of a company so organized to exercise the right of eminent domain. In view of this state of things the legislature, in 1885, declared that the production and distribution of natural gas had become, and then was, a matter of " prime necessity ; " that the business was so important as to justify declaring it " a public use ; " and that it had become essential that corporations for this purpose " should be provided for by general law." It then conferred by apt words the right of eminent domain on all corporations then engaged or thereafter to be engaged in the business, and prescribed the manner in which the assessment of damages should be made and the amount thereof finally adjusted. Whatever the situation of the plaintiff may have been under the act of incorporation, he now has an ample remedy for the recovery of his damages under the general system provided by the act of 1885.

This conclusion renders it unnecessary to enter at any length upon a discussion of the constitutional question raised over the title to the act of 1871. If it should be conceded, as the plaintiff in error contends, that the title does not sufficiently indicate a purpose to confer the right of eminent domain, or that it is misleading so far as this subject is concerned, such concession could not affect the decision of this case. Its only result would be to render so much of the act as the title gave no notice of, unconstitutional. This was distinctly ruled in the Union Pass. Railway Co.'s App.; 81* Pa. 91, and in the Allegheny Co. Home's App., 77 Pa. 77. The balance of the act would be unaffected. The corporation would remain with the general powers with which it was endowed; and as it was actually engaged in the transportation of natural gas when the act of 1885 became a law, it would acquire under its provisions both the right of eminent domain and the system for adjusting the damages done by its exercise.

But, speaking for myself, I would hold the title to the act of 1871 to be neither insufficient nor misleading. It is in these words : " An act to incorporate the Empire Contract Company and define the powers thereof." All persons interested in knowing what contracts the company may make, or what powers it possesses, have notice from the title that both these

subjects are covered by the act which follows. This is a sufficient compliance with the constitutional provision. It is only necessary the title should fairly give notice of the subject of the act, so as reasonably to lead to an inquiry into its body: Allegheny Co. Home's Case, 77 Pa. 77; Craig v. Church, 88 Pa. 42; Loewi v. Haedrich, 8 W. N. 70. It is not necessary that the title should be a complete index of its contents: Com. v. Green, 58 Pa. 226.

Our conclusions on the whole case may be summarized as follows:—

The special law incorporating the defendant company, while it may be improvident in some of its provisions, is nevertheless valid.

The grant of power therein is sufficiently comprehensive to authorize the company to engage in the production, distribution, and supply of natural gas as a fuel.

It possessed the right of eminent domain under the provisions of its charter.

If this is doubtful it acquired it under the act of 1885 beyond doubt.

The general system for the assessment of damages provided by the act of 1885 is applicable to companies engaged in the transportation of natural gas at and before its passage as well as to those organized for that purpose under its provisions.

Another and a graver question is suggested by this discussion, but it is not involved in this case. The policy of the state is to commit the development and prosecution of different enterprises to different classes of corporations. One furnishes a city with water, another with light, and a third with heat. One carries packages, another transmits messages, and so on through the numerous manufacturing, mining, commercial, and financial agencies which the business of this age brings into its service. The question which we have is not whether a single corporation organized under an " omnibus charter " like that of the Philadelphia Company may be permitted to gather up into one corporate hand all the powers and franchises of the commonwealth, but whether this company may do this particular business in which it has embarked its capital. We hold that it may; that the powers granted by the act of incorpora-

tion authorized it to engage in this business and to become a natural gas company. The other subject is referred to only that we may in the language of the old pleaders " exclude the conclusion " that it is in the least degree involved in or affected by the decision of this case.

The appeal is dismissed at the costs of the appellant.