UNITED STATES v. CONSUMERS' GAS TRUST CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1906.)

No. 1,205.

INTERNAL REVENUE—WAR REVENUE ACT—TAX ON PIPE LINE COMPANIES.

A corporation organized for the purpose of producing natural gas from wells owned or leased by it, piping the same to a city, and selling and distributing it to consumers, and engaged solely in such business, its only

Income being derived from the sale of its products which it conveyed through its own pipe lines, is not subject to tax on the excess of its gross annual receipts over $250,000, under section 27, War Revenue Act July 13, 1898, c. 448, 30 Stat. 464 [U. S. Comp. St. 1901, p. 2306], imposing such tax on persons or corporations "owning or controlling any pipe line for transporting oil or other products.

In Error to the District Court of the United States for the District of Indiana.

Section 27, Revenue Act June 13, 1898, c. 448, 30 Stat. 464 [U. S. Comp. St. 1901, p. 2306], provides: "That every person, firm, corporation or company carrying on or doing the business of refining petroleum or refining sugar, or owning or controlling any pipe line for transporting oil or other products, whose gross annual receipts exceed two hundred and fifty thousand dollars shall be subject to pay annually a special excise tax equivalent to one-quarter of one per cent. on the gross amount of all receipts of such persons, firms, corporations and companies in their respective business in excess of said sum of two hundred and fifty thousand dollars."

The question is whether the District Court erred in holding that the defendant in error was not within the section on the following facts:

"(1) That the petitioner, the Consumers' Gas Trust Company is a corporation organized in the year 1887 and existing under the laws of the state of Indiana, having its home office in the city of Indianapolis, and that said corporation had been during all the time after its organization engaged in business in said city; its said business being that of procuring from wells sunk in the earth natural gas and selling the same directly to its consumers in the city of Indianapolis.

"(2) That by its articles of incorporation the purposes, objects, and powers of said corporation were set forth in the following words: 'The objects of the formation of such corporation are to drill and mine for natural gas, petroleum, and other minerals; and to purchase, lease, and otherwise acquire gas and petroleum wells and the products thereof, and to furnish the same to its patrons for use; and by manufacture, to convert the same into gas for fuel and illuminating purposes, and other articles of commerce, and the sale of the product to its patrons; to these ends, to take, hold, convey and mortgage real estate, by fee simple or lesser title; and to own, operate, and maintain such machinery, works, lines of pipe, and appliances as the carrying out of the objects above mentioned may require;' and that it has never been authorized to do, and has never undertaken or done, any other or different business than as in said articles set forth.

"(3) That for the purpose of conveying its said natural gas from its wells and distributing the same to its customers, it owned and controlled at the time of the commencement of this suit and for more than 10 years next prior thereto, a system of pipe lines, which was used solely in its said business; that the gas wells from which during all of said time it obtained its said gas are situated at distances varying from about 7 to 60 miles from said city; that such gas has been piped from such wells through a system of larger and smaller pipes to said city and thereby distributed through an ordinary system of main and service pipes with proper compressors, valves, and other appliances to regulate and control the pressure of said gas in said pipes.

"(4) That said company has not at any time been engaged in any business whatsoever, and has never owned, maintained, or used any pipe lines, system of pipe lines, or any part thereof, for the purpose of conveying, transporting, or selling gas, oil, or other things, except its own gas in the manner above set forth.

"(5) That the entire receipts of said company have been from the sale of its own natural gas so carried to its customers and consumers directly from its own wells, and no part of such receipts have been derived from charges made for transportation of such gas or any other product or substance, nor from any tolls or charges of any kind for the use of any of its pipes or pipe

lines, and no person, partnership, or corporation other than the petitioner has at any time made any use of any of its pipe or pipe lines for any purpose whatever.

"(6) That no part of said gas has been stored at any time or at any point, but it has at all times been carried directly from the company's own wells to its consumers, as water is pumped directly from wells, and carried through pipes to consumers in cities and towns.

"(7) That on or about the 17th day of September, 1902, petitioner was assessed for an internal revenue tax of $763.01; such assessment purporting to be upon receipts from its pipe lines used in furnishing natural gas to its customers in said city of Indianapolis for the years ending June 30, 1901, and June 30, 1902.

"(8) That said assessment was, in fact, levied upon the excess over $250,-000 per annum of its receipts from its entire business and revenues derived from the mining, pumping, piping, sale, and delivery of its said gas to its consumers, and not merely from the revenues derived from its pipe line only, and this was necessarily levied since from its pipe lines, no revenues were derived apart from those of the rest of said business, and it was impossible to measure or estimate the part or per cent. of said total revenues attributable to said pipe lines.

"(9) Said assessment was made under section 27 of an act to provide ways and means to meet war expenses and for other purposes, passed by the Congress of the United States on the 13th day of June, 1898.

"(10) Petitioner denied the validity of said assessment at the time the same was made, upon the ground that that statute was not applicable in its case, but in pursuance of the statute, on the 19th day of September, A. D. 1902, it paid under protest to A. E. Nowlin, collector of internal revenue, for the Sixth district of Indiana, said sum so assessed, as aforesaid; that said sum was so paid for the reason that said collector was threatening that unless it was paid to levy upon and sell petitioner's property to collect the same, and such payment was made wholly to avoid such levy and sale, and under protest only.

"(11) That the sum so paid was received by said collector, and applied to the use of the government of the United States, and because of said illegal assessment as aforesaid.

"(12) That about the 30th day of September, 1902, petitioner made out and caused to be presented to the honorable, the commissioner of internal revenue of the United States, its application for reversal, annulment, and abatement of said assessment, and for the refunding of the money so paid.

"(13) That afterwards, on or about the 30th day of June, 1903, said application was by the commissioner overruled and denied, and the government of the United States still retains the whole of said sum of money.

"(14) That during each of said years 1901 and 1902, said petitioner did have an income from its entire business as hereinbefore found to an amount in excess of $250,000, upon which excess the tax, if properly assessable thereon, aggregated said sum of $763.01.

"(15) That for the year ending June 30, 1899, the said petitioner was engaged in the same business carried on in the same manner, and had gross receipts from its said business for the year ending June 30, 1899, aggregating $473,780.92, and for the year ending June 30, 1900, it had in like manner a total gross income of $458,163.95, or for the year 1899, an excess over $250,000 of $223,780.92, upon which the tax, if properly assessable, would aggregate $559.45, and for the year 1900 an excess over $250,000 of $208,163.95, upon which the tax if properly assessable would be $520.41, or for the two years $1,079.86; that said sum of $1,079.86 has not been paid nor has any part thereof.

"(16) By reason of the fact that the petitioner's revenues from its entire business were derived in the aggregate and without any distribution from its mining, pumping, sale, and delivery of its gas to its consumers, it is impossible, as matter of fact, to determine what part of its said revenues is derived from the use of its said pipe lines."

Jesse M. La Follette, for plaintiff in error.
Samuel D. Miller, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge, after stating the facts, delivered the opinion of the court.

Section 27, Act June 13, 1898, c. 448, 30 Stat. 464 [U. S. Comp. St. 1901, p. 2306], exacts revenue from all persons engaged in certain businesses, provided such persons come within a certain condition. The businesses are refining petroleum, refining sugar, and transporting oil or other products through pipelines owned or controlled by the transporter. The condition is that the persons engaged in those businesses have gross annual receipts from their respective businesses in excess of $250,000.

The business of mining natural gas and selling it to consumers was not taxed. That was the only business in which defendant in error engaged or had authority to engage, and from that business alone its entire income was derived. As well tax artificial gas companies and water companies, because in their businesses of getting and selling gas and water to their customers they use pipe lines as means of delivery. As well include within a tax on the gross receipts of parcel-delivery companies the total sales of a dry goods house that uses its own conveyances as a means of delivering parcels of goods sold to its customers. Carothers v. Philadelphia Co., 118 Pa. 485, 12 Atl. 314; United States v. Northwestern Ohio Natural Gas Co., 141 Fed. 198.

If defendant in error had engaged in a business within the statute, then receipts derived from every facility for promoting that business would be within the statute. Spreckels Sugar Refining Co. v. McClain, 192 U. S. 397, 24 Sup. Ct. 376, 48 L. Ed. 496. But since the business was not within the statute, receipts (benefits in promoting or cheapening the business) derived from facilities used in carrying on the business are inseparable from the receipts of the business, and are therefore not within the statute.

The judgment is affirmed.