## Franke *v.* Johnstown Fuel Supply Co.

*Public Service Commission — Jurisdiction — Natural gas companies—Appeals — Appeal before termination of proceedings — Party affected.*

Where a natural gas company files a new tariff increasing its rates in a city, and a protest is filed against such increase, and a hearing is had where it is developed that it received its gas under a special contract, from another natural gas company, and the commission makes an order directing the second company to file its tariff and schedule of rates covering its service in supplying natural gas to the first company, the second company is entitled to appeal from such order under the terms of the Public Service Commission Act without waiting until the whole litigation is completed.

The Public Service Commission is not a court of law. It has quasi judicial functions, but they are administrative in character,

and its jurisdiction must be found in the statute which brought it into existence, and its amendments. The right of appeal is therefore necessarily statutory, and the conditions under which this right may be exercised are to be found in the provision for such appeals.

As the act provided that any order of the commission might be appealed from "within thirty days after it is filed, by any person affected thereby," the purpose of the act was to give to any party involved in the proceedings a right of appeal without regard to the determination of the case as to other parties.

*Public Service Commission — Natural gas companies — Public service company—Supply to one customer—Interstate commerce.*

Where a natural gas company organized under the laws of Pennsylvania and having the right of eminent domain supplies gas, under a special contract, to another natural gas company, which in turn serves a city, and the first company has no other customer within the city, such company is a public service company, and subject to the provisions of the Public Service Company Law with respect to the sale of natural gas to the other company.

In such a case the fact that the first company received a portion of its natural gas into its pipes at the state line from a West Virginia corporation which did not do any business in Pennsylvania with respect to its transactions with the Pennsylvania company, does not oust the jurisdiction of the Public Service Commission over the first company on the ground that the company was engaged in interstate commerce; and this is the case, because (1) the State has a right to legislate in reference to such business, in the absence of action by Congress; and (2) because the oil when it was delivered at the state line became mingled with the general body of property in the State of Pennsylvania and its identity as an imported product was entirely lost.

Argued April 29, 1918. Appeal, No. 111, April T.; 1918, by Peoples Natural Gas Company, from order of Public Service Commission, Complaint Docket, Nos. 1083, 1916, directing the posting of the tariff and schedule of rates in case of Louis Franke v. Johnstown Fuel Supply Company and Peoples Natural Gas Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Protest against a tariff and schedule of rates published by a natural gas company.

From the record it appeared that the Johnstown Fuel Supply Company, a Pennsylvania corporation was engaged in the business of furnishing natural gas to consumers in the City of Johnstown. On July 15, 1916, the company filed a new tariff and schedule of rates with the Public Service Corporation. Subsequently the Cambria Steel Company for itself and Louis Franke for himself as a consumer and as mayor of Johnstown filed their complaints against the proposed increase of rates. At a hearing on these complaints it was developed that the Johnstown Fuel Supply Company received its whole supply of natural gas from the Peoples Natural Gas Company, a corporation of Pennsylvania, having the right of eminent domain, but which received a part of its supply into its pipes at the State line from a corporation of the State of West Virginia. This supply of gas was furnished by the Peoples Natural Gas Company under a special contract with the Johnstown Fuel Supply Company which was its only customer in Johnstown. The Peoples Natural Gas Company appeared in the case, and filed a demurrer denying the jurisdiction of the Public Service Commission.

The commission made the following order:

"This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaint and demurrer on file, and having been duly heard and submitted by the parties and full investigation of the matters and things having been had, and the commission having found that the service which the Peoples Natural Gas Company is engaged in is a public service, and that the Peoples Natural Gas Company is a public service company within the meaning of the Public Service Company Law.

"Now, to wit, December 4, 1917, it is ordered, That the demurrer of the Peoples Natural Gas Company, be and the same hereby is overruled.

"It is further ordered, That the Peoples Natural Gas Company file, post and publish according to law, its

tariff and schedule of rates covering the service complained of in this complaint within fifteen days after the service of this order.

"And it is further ordered, That the application of the Johnstown Fuel Supply Company requesting permission to put into effect its schedule of increased rates in advance of the final finding and determination of the Commission, be and the same hereby is denied."

*Error assigned* was the order of the commission.

*G. B. Gordon*, of *Gordon & Smith*, with him *Christy Payne*, for appellant.—Under the Public Service Law this is an order from which an appeal lies whether or not it be analogous to a technically final judgment in an action at law or decree in a suit in equity: Sinking Spring Water Co. v. Gring, 257 Pa. 340; W. Va. P. & P. Co. v. Public Service Com., 61 Pa. Superior Ct. 555; B. & O. R. R. Co. v. Public Service Com., 66 Pa. Superior Ct. 403.

The connection of the Peoples company with the supply of natural gas in Johnstown was not that of a company rendering public service but was a private contractual relationship and whether the price fixed in that contract was reasonable or not was entirely immaterial: Marin Water, Etc., Co. v. Town of Sausalito, 168 Cal. 587; Newark Nat. Gas & Fuel Co. v. Newark, 242 U. S. 405; Fallsburg v. Alexander, 101 Va. 98; Palairet's App., 67 Pa. 479; Jacobs v. Clearview Water Supply Co., 220 Pa. 388; Penna. Mut. Life Ins. Co. v. Philadelphia, 242 Pa. 47.

The order of the commission in this case is a regulation of interstate commerce and void: Gibbons v. Ogden, 22 U. S. 1.

The time and place at which the title to the goods passes, as between the seller and buyer, is not controlling upon the character of the shipment: Norfolk Ry. v. Sims, 191 U. S. 441; Penna. R. R. v. Clark Bros. Coal Co., 238

U. S. 456; Penna. R. R. v. Sonman Shaft Coal Co., 242 U. S. 120.

*J. E. B. Cunningham,* with him *Tillman K. Saylor,* City Solicitor, and *Spencer G. Nauman,* for Louis Franke.—No appeal lies from the order of the commission, overruling the demurrer of the appellant and directing it to file a schedule of its rates for the services rendered by it at Johnstown: Bellevue Borough v. Ohio Valley Water Co., 245 Pa. 114; St. Clair Borough v. Tamaqua & Pottsville Elec. Ry. Co., 259 Pa. 462; Stuchul v. Stuchul, 233 Pa. 229.

The service rendered by the Peoples Natural Gas Company at the City of Johnstown is a public service and within the jurisdiction and control of the commission.

The appellant company is not so engaged in interstate commerce as to oust the jurisdiction of the Public Service Commission of Pennsylvania over it with respect to the supplying of gas in the City of Johnstown: Bowman v. Chicago & N. W. R. R. Co., 125 U. S. 507.

*Berne H. Evans,* for Public Service Commission.

Opinion by Henderson, J., October 30, 1918:

This is an appeal by the Peoples Natural Gas Company from an order of the Public Service Commission requiring the appellant to file its tariff and schedule of rates covering its service in supplying natural gas to the Johnstown Fuel Supply Company, a corporation engaged in the furnishing of natural gas in the City of Johnstown. The proceeding originated in an increase of its rates of service by the latter company and the protests filed by certain of the patrons of that company against such increase. At the hearing before the commission on the proposal to increase the rates the fact was developed that the Johnstown company received its supply of natural gas from the Peoples Natural Gas Company; whereupon, the latter company was summoned

by the commission to appear in the case. That notice having been complied with, the last named company filed its answers to the complaints in the proceeding, denying the jurisdiction of the Public Service Commission to make an order affecting the Peoples Natural Gas Company. After further proceedings before the commission the answer of the Peoples Natural Gas Company was overruled and the order made from which this appeal was taken. The record of the Public Service Commission having been filed in this court a motion was made by the appellees to dismiss the appeal on the ground that the order complained of was interlocutory and that the appellant was not entitled to be heard until a final determination was made in the complaints against the Johnstown Fuel Supply Company. A preliminary inquiry is thus raised as to the regularity of the appeal, the contention of the movers for its dismissal being that the parties to such a proceeding can only be heard on an appeal to the Superior Court after the whole case is disposed of by the Public Service Commission in analogy to the practice in appeals from judgments and decrees of courts of law and equity. The position taken by the appellant is that the only action of the commission affecting it is the order appealed from and that it is in no way interested in, or a party to, the proceeding relating to the increase of rates by the Johnstown Fuel Supply Company. It becomes very clear from an examination of the statute creating the Public Service Commission and declaring the jurisdiction thereof and the procedure to be observed in proceedings to be brought before that body as well as in the declaration of the form in which its conclusions shall be made that it is not a court of law. It has quasi judicial functions but they are administrative in character and its jurisdiction must be found in the statute which brought it into existence and its amendments: W. Va. Pulp and Paper Company v. Public Service Commission, 61 Pa. Superior Ct. 555. The right of appeal is therefore necessarily statutory

and the conditions under which this right may be exercised are to be found in the provision for such appeals. The Act of 1913 as amended by the Act of 1915, P. L. 779, provides that: "Within thirty days after the filing of any finding or determination by the commission or at the date of the service of any order—unless an application for a rehearing may be pending and then within thirty days after the refusal of such application—or the entry of an order modifying, amending, rescinding or affirming the original finding, determination or order any party to the proceedings affected thereby may appeal therefrom to the Superior Court." It will be seen that the thing to be appealed from is a "finding" or "determination" or "order" of the commission and that the party having a right to an appeal is one "affected thereby." It is obvious when we consider the general scope of the powers of the Public Service Commission under the statute that numerous parties might be involved in one proceeding and that various findings or determinations or orders might be made affecting one or all of such parties. It would result in many cases that there would be no final order affecting all the parties alike. The various circumstances of the parties and their relation to the matters in controversy would require appropriate action of the commission as suggested by such circumstances and relations. And this was evidently in contemplation in the use of the terms employed in the enactment. There being no community of interest in many instances the action to be appealed from in each case would be that affecting the party taking the appeal. There is no obscurity in the language used and when it is declared in a statute that any order of the commission may be appealed from "within thirty days after it is filed, by any person affected thereby" we do not find room for doubt that this was intended to give to any party involved in the proceeding a right of appeal without regard to the determination of the case as to other parties. The fact that the control of corporations given to the

Public Service Commission had theretofore been exercised by courts of law does not compel the conclusion that the procedure observed in such courts followed the jurisdiction. The pending case is an illustration of the reasonableness of the conclusion suggested. The appellant was not an original party to the proceeding. The only order affecting it requires it to file a schedule of rates. Compliance with that order might end the proceeding so far as the appellant is concerned. There is no issue joined in which the appellant must necessarily participate. The present appeal raises the whole question of the appellant's responsibility and of the jurisdiction of the commission to compel it to comply with the order. The order may or may not be interlocutory but it is not obviously so. No subsequent proceeding necessarily follows compliance by the appellant with the determination of the commission. Where a statute gives an appeal after the filing of a decree or where the pleadings in a proceeding in equity call for a definitive decree as in Sinking Spring Water Co. v. Gring, 257 Pa. 340, purely interlocutory action of the court will not support an appeal. But the statute here gives an appeal from a finding, determination or decree which prejudicially affects a party and the appellant we think is now entitled to a review of the case against it.

Two objections are presented to the action of the Public Service Commission: 1. That the Peoples Natural Gas Company is not a public service company nor subject to the provisions of the Public Service Company Law with respect to the sale of natural gas to the Johnstown Fuel Supply Company; and, 2. That "what the Peoples Natural Gas Company does is interstate commerce and beyond the power of the commission." The Peoples Natural Gas Company is a Pennsylvania corporation chartered under the Act of May 29, 1885, P. L. 29. The statute authorizes the incorporation of such companies for the purpose of producing, dealing in, transporting and storing and supplying natural gas to such

persons, corporations or associations within convenient connecting distance of its line of pipe as may desire to use the same. The right of eminent domain for the laying of pipe lines for the transportation and distribution of natural gas is given and in the tenth section it is enacted that "The transportation and supply of natural gas for public consumption is hereby declared to be a public use and it shall be the duty of corporations organized or provided for under this act, to furnish to consumers along their lines and within their respective districts natural gas for heat or light or other purposes as the corporations may determine." Under the authority of its charter the appellant has been engaged for many years in the production of natural gas and the sale thereof in Pittsburgh, Wilkinsburg, Greensburg, Latrobe, Cresson, Gallitzin, Altoona and other localities. We do not understand that it denies its responsibility under the law with respect to its business in the communities where its operations are principally carried on. Its position is that with respect to the business at Johnstown it deals with one customer, the Johnstown Fuel Supply Co.; that its sales to that company are "at wholesale" and that because of this manner of disposing of its product it is not exercising its power as a public service corporation. The evidence shows that a contract was entered into between the Peoples Natural Gas Company and the Johnstown Fuel Supply Company under which the former company agreed to supply natural gas to the latter as provided in the contract, the consideration to be paid being "an amount equal to seventy per cent. of its gross receipts from the sales of natural gas to consumers paying domestic rates" and "a sum equal to seventy-five per cent. of the gross receipts to others than domestic consumers." The relationship between the two companies as contended by the appellant is purely a contract relationship; that there is not a joint relationship between the companies in the supplying of gas to the City of Johnstown nor a public service ren-

dered by the Peoples Natural Gas Company. It is contended on behalf of the appellees that the provisions of the contract between the companies establishes a joint service; that the appellant controls the price of gas in Johnstown by fixing the rate at which it is sold; that the Johnstown company has no other source of supply and that there is coöperation between the two companies in providing a supply of gas and collecting the compensation for its use. We think it unnecessary to enter into a discussion of this aspect of the case for as we view the attitude of the Peoples Natural Gas Company in the light of the statute under which it was created it is engaged in the exercise of a public use with respect to the production and supply of natural gas. It is because of the character of its service that the company has corporate existence. It occupies the highways of the Commonwealth and may exercise the right of eminent domain and as shown by the evidence has exercised that right with respect to a portion of its pipe lines. Its only business as disclosed by the evidence is the production and supplying of gas. It does transport the gas from the source of supply to the distributing points but this transportation is incidental merely to the business in which it is engaged. It is necessary that the gas be transported in pipes but nothing in the evidence tends to show that the defendant is a common carrier. It does not hold itself out as a transporter of gas for other companies or for private individuals. It is the owner of all the gas that is in its pipes and it has never engaged in gas transportation as a business. It delivers its commodity by the use of pipes but this is done by every water company or gas company supplying a town or city and it would scarcely be contended that such companies are engaged in the transportation of freight: Carothers v. Philadelphia Co., 118 Pa. 468. The legislature has declared that the business in which the appellant is engaged, the transportation and supply of natural gas for public consumption, is a public use and

this is primarily a question for the legislative department of the government. The presumption is in favor of the legislative declaration subject to the judicial inquiry whether the use is in fact a public use: Penna. Mutual Life Ins. Co. v. Philadelphia, 242 Pa. 47. The exercise of authority by the legislature is not to be set aside except on the clearest necessity, and this necessity is not apparent where the company comes into existence under the very statute which defines its character and the nature of its service. What the company did was from the beginning subject to the conditions under which it existed at all. The public had no interest in, or right to, the gas of the promoters of the Peoples Natural Gas Company until the latter for the purpose of obtaining the advantages accorded to them under the statute organized their company. The owners were not compelled to give to the public an interest in their supply of gas but they became under obligation to the laws of the Commonwealth if they used it in the manner prescribed by that law. When the shareholders accepted the charter of the company and proceeded to exercise the franchises thereby granted they invested the public or such limited portion of the public with a use or right of use in the commodity which they supplied. This constitutes a public use—such a use as might have been in the contemplation of the parties when the company was organized: Arnsperger v. Crawford, 101 Md. 247; Penna. Mu. Life Ins. Co. v. Philadelphia, supra; Munn v. Ill., 94 U. S. 113. Does the fact that the Peoples Natural Gas Company deals with the Johnstown Fuel Supply Company under a special contract change the relation of the appellant company to the public? If so, it would seem a logical conclusion that a special contract with each consumer would have the effect to exempt the company from accountability to the Commonwealth under the public service law. When we consider that a contract either express or implied exists in every case where gas is supplied to a consumer by the company, in

most cases for domestic consumption, but in others for the use of manufactories, the distinguishing effect of the contract with the Johnstown company from that with the Cambria Steel Company and the consumers of gas in any community where the supply pipes of the appellant are located is not apparent. It is not a case of the rendering of separable services. Conceding as claimed by the learned counsel for the appellant that there is no reason why a corporation engaged in one class of service may not engage in various other classes of service by making express or implied professions of them there must in such cases be diverse services. The illustration of a municipality operating a system of water works and at the same time maintaining a sewerage system is a case of diverse services. The case of the Public Service Commission v. Spokane, Etc., R. R. Co., 89 Wash. 599, cited in support of the position was one in which a railroad company having a surplus of power contracted with some individuals and companies for power not needed by it in the operation of its railway line, but this was clearly the case of a company the business of which was the operating of a railroad. All railroad operations were subject to the laws of the State regulating such companies. It was not, and was not held out to be, a power company, but using power in the prosecution of its business it might dispose of its surplus. So here, if the company in the development of its gas territory produced petroleum from some of its wells it might dispose of that product without regard to the legislation relating to the service of gas companies. But when the company was by purpose and law committed to the supplying of natural gas as its exclusive business what it does with respect to this commodity is done in the exercise of a public service. The case of Marin Water, Etc., Co. v. Sausalito, 168 Cal. 587, strongly relied on by the appellant arose out of the sale of water by a water company to a town in that state and involved the construction of the constitution of the state which pro-

vided that all water now appropriated or that may hereafter be appropriated for sale, rental or distribution is hereby declared to be a public use, and subject to the regulation and control of the state. The question was whether the sale of water to the municipality constituted a dedication of water to the public use. The court held that the acceptance of that conclusion would destroy private rights in water and convert every sale thereof into a dedication to public use, and that in the opinion of the court the Constitution was not intended to have that effect. What the scope and activities of the company were under the laws of the State is not disclosed. The case does not decide the principle involved in the pending appeal.

The gas supplied by the Peoples Natural Gas Company was all produced from wells in Pennsylvania until that supply became insufficient for the uses of the company because of the extension of its service and the decrease in the quantity of gas produced by the wells. It, then, entered into a contract with the Hope Natural Gas Company of West Virginia for a supply of gas from that state. That contract provided that the latter company would deliver at the Pennsylvania State line a supply of natural gas which was to be there received by the Peoples Natural Gas Company in its pipe lines. The Hope Natural Gas Company is a West Virginia corporation which does not do any business in Pennsylvania with respect to its transactions with the Peoples Natural Gas Company. The Peoples Natural Gas Company did not extend into West Virginia and has no operations therein. Its extensive pipe line system holds its supply of gas. About two-thirds of the quantity which it distributed latterly came from the Hope Gas Company. The remainder came from its wells in Westmoreland, Armstrong, Indiana and perhaps other counties in Pennsylvania. The gas from Pennsylvania wells was mingled with the West Virginia gas in the same pipe line. When the gas was delivered by the Hope Gas Company at the

State line there was no determinable destination or ascertained place of consumption in Pennsylvania. It was stored in the pipes of the Peoples Gas Company and in them distributed to various points where it was burned. It is because of this purchase of gas from the Hope Natural Gas Company that the appellant claims exemption from the operation of the laws of Pennsylvania, the position taken being that the gas acquired from the Hope Natural Gas Company is a commodity in interstate commerce and that it is not subject to State regulation, after passing into the ownership and custody of the Peoples Natural Gas Company and being mingled with the gas produced by it in Pennsylvania. Numerous authorities are cited in support of the proposition that the power to regulate commerce among the states was granted by the people by means of the Constitution to the Congress of the United States; that that grant is exclusive; that no state may by any law or act prohibit or substantially restrain its freedom; and this principle is held to apply to the facts in the case before us. The general principle asserted is, of course, conceded. The power of Congress to regulate commerce among the states is supreme and as to those subjects which require a general system or community of regulation its power is exclusive and in subjects admitting of diversity of treatment according to the special requirements of local conditions although the states may act within their respective jurisdiction until Congress sees fit to act, when Congress does act the exercise of its authority overrules all conflicting State legislation. Within these limitations, however, there remains in the State a wide field for the lawful exercise of authority appropriate to territorial conditions until Congress acts although interstate commerce may be affected. Where the subject is one peculiarly of local concern and from its nature belongs to the class with which the State appropriately deals in making reasonable provision for local needs it cannot be regarded as left to the unrestrained will of

individuals because Congress has not acted, although it may have such relation to interstate commerce as to be within the reach of Federal power : Gilman v. Philadelphia, 3 Wallace 713 ; Parkersburg & O. R. Trans. Co. v. Parkersburg, 107 U. S. 691 ; Pearsall v. Great Northern Ry. Co., 161 U. S. 646 ; R. R. v. Fuller, 84 U. S. 560 ; Cooley v. Board of Wardens, 12 Howard 299. The decision in the Min. Rate Cases, 230 U. S. 352, contains an elaborate discussion of the respective jurisdictions of the State and Federal authorities and many cases are cited sustaining the foregoing principle. It is to be observed that the legislation complained of is not directed against interstate commerce nor does it assume to impose a restriction or burden thereon. The order of the Public Service Commission merely requires the appellant company to file its schedule of rates. This in no way interferes with the purchase of West Virginia gas at the State line nor does it impede the distribution of the appellants' gas supply throughout the State. If it have any bearing on commerce between the states it is incidental, and on a subject with respect to which Congress has not directly acted and which may, therefore, be assumed to have been left to the control of the State because it is incidental. "Legislation of a state not directed against commerce or any of its regulations but relating to the rights, duties and liabilities of citizens and only indirectly and remotely affecting the operations of commerce is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water or engaged in commerce, foreign or interstate, or in any other pursuit" : Smith v. Ala., 124 U. S. 465 ; Pittsburgh Coal Co. v. Louisiana, 156 U. S. 590. This doctrine is applicable, we think, to the case presented by the appellant and is an answer to the argument that the Federal commerce law overrides the legislation of the State on the subject involved in this litigation. It is not easy to draw a distinct line separating the jurisdiction of the Federal from the State authorities in all cases. Legislation of the

states may affect commerce and persons engaged in it in many ways without amounting to a regulation of it and it becomes the duty of the court in the particular case to point out the discriminations which locate the subject on one side or the other of the dividing line. A consideration of all of the facts leads us to the conclusion that the case before us is within the class with respect to which the authority of the State has not been taken away.

Nothing has been said thus far of that aspect of the case with respect to which it is contended that the gas obtained from West Virginia was taken out of the operation of the Federal commerce law because it became mingled with the general body of property in the State. It is property of a peculiar character necessarily confined in tanks or pipes and distributed from place to place by pressure through diverging pipes. It was not consigned from one state to a terminus in another. It was delivered into the containers of the appellant in the State of Pennsylvania and controlled by the latter in its distribution from place to place and so mingled with the Pennsylvania gas that its identity as an imported product was entirely lost. It would seem to have as fully lost its distinctive character as an import as did the coal in the case of Brown v. Houston, 114 U. S. 622, where a flat-boat loaded with coal at Pittsburgh and floated down the river to Louisiana was held to have become merged in the property of the State although it remained in the boat in the same condition in which it was shipped from Pittsburgh and was merely moored to the river bank. A like conclusion was reached in Pittsburgh Coal Co. v. Bates, 156 U. S. 577.

It does not seem to be denied that the appellant is subject to regulation as a public service company with respect to part of its business in the State nor could this be successfully done. The authorities cited in Munn v. Ill., supra, show conclusively the authority of the State and a discussion of the subject would be superfluous.

Much reliance is placed on the decision in Landon Publishing Utilities Co., 242 Fed. Rep. 658. The principal ground on which the case was decided was that the rate for gas was a charge on transportation and as the transportation was between states it was a burden on interstate commerce. The other reason was that the rates fixed were confiscatory. It appeared that the gas was sold by the company that produced and transported it and not by a purchaser within the State.

Since the foregoing opinion was written the learned counsel for the appellant have called our attention to the decision of the Supreme Court of the United States in the case of Western Union Telegraph Company and United Telegram Company, plaintiffs in error, v. Calvin H. Foster and Frederick J. Mcleod et al., members of the Public Service Commission of Massachusetts, delivered May 20th, and have suggested that the opinion supports their contention. The contention there was the right of Calvin H. Foster, one of the defendants, to have furnished to him the continuous quotations of the New York Stock Exchange by means of ticker service, as furnished by the plaintiffs in error to other brokers, the Public Service Commission of Massachusetts having determined that the refusal so to supply him was an unlawful discrimination. One of the defenses presented to the action of the commission was that the transaction was interstate commerce and therefore, not subject to the control of the Public Service Commission. The quotations were sent from New York by the Western Union Telegraph Company in the name of the Gold and Stock Telegraph Company to the office of the latter in Boston and were thence transmitted by an operator to the tickers in the offices of the brokers who had subscribed therefor. The United Telegram Company, one of the plaintiffs in error, is a New Jersey corporation which received quotations from Boston alone where it had its principal office outside of New Jersey. Its quotations were furnished by the Stock Exchange in New York, telegraphed to the

Boston office over a wire of the Postal Telegraph Cable Company and thence transmitted to customers as in the other case.  On this state of facts the decision of the court was that the transmission of the quotations did not lose. its character of interstate commerce until it was completed in the broker's offices and that interference with the transmission was not within the power of the State.  It was further held that the analogy of a receiver of a package breaking bulk and selling in retail trade did not apply.  Upon this subject the court said: "Unlike the case of breaking bulk for subsequently determined retail sales, in these the ultimate recipients are determined before the message starts and have been accepted as the contemplated recipients by the Exchange."  The contemplated and adopted course of business was a transmission as continuous and rapid as communication by telegraph could make it from the stock exchange to the broker's office and inasmuch as the transmission from New York to Massachusetts was interstate commerce it so continued until it reached the point where the parties originally intended that the movement should finally end.  The conclusion is based on the continuity of a definite service pursuant to a contract as agreed upon by the parties.  There was no break in the transit of the communication except such as was made necessary by the translating of the code terms in the office in Massachusetts.  The principle applied to the facts is clear but there is a marked difference between these facts and those exhibited in the business operations of the appellant.  After an examination of the decision we are not convinced that it controls the case before us.

On a consideration of the whole subject we reach the conclusion that the order complained of was within the authority of the Public Service Commission.  It follows that the appeal should be dismissed.

Appeal dismissed at the cost of the appellant.