## Citizens' Passenger Railway Company et al., Appellants, *v.* The Public Service Commission.

*Public service commission—Procedure—Appeals—Final order.*

An order of the Public Service Commission dismissing a demurrer to its jurisdiction and ordering the demurrants to answer and proceed to a hearing, is a judgment, order or decree of the Pub-

lic Service Commission from which an appeal will lie to the Superior Court.

An order of the Public Service Commission requiring a public service company, which was not engaged in the actual business of transportation, to come before the commission and subject itself to investigation, is a forward order of the commission, fraught with such consequences, that it should be subject to review by a judicial body at the earliest possible moment, so that unnecessary waste of time, money and effort can be avoided.

In a proceeding to determine the fair rate to be charged by a public service company, the Public Service Commission, in the performance of its duty in ascertaining the fair present value of the property affected with the public service, is not necessarily obliged to consider the private contracts between the operating company and its lessors, the property owners. As between the parties who made them, those contracts are as secure from interference as those of other citizens. But the public was not a party to those contracts, and no stipulation therein contained, for the benefit of one or the other of the parties thereto, can deprive the public of its paramount right to reasonably adequate service at a reasonably fair rate.

The leases between the operating company and the owners of the lessor companies cannot be directly attacked before an administrative body with the avowed end of having the rentals, therein provided for, reduced to such a sum as the Public Service Commission may determine should have been the proper rentals under the circumstances.

The Public Service Commission has power to compel the rendition of adequate service at fair rates over the property owned by the lessor companies, by determining the fair valuation of the operating company and adjusting the rates in accordance therewith. The fact that such a valuation would seriously affect the rentals under the contracts in question should not be considered in such proceeding.

HENDERSON and KELLER, JJ., dissent.

Argued October 18, 1920.  Appeals, Nos. 252 to 273, by Citizens' Passenger Railway Company et al., from the Order of the Public Service Commission of Pennsylvania, Complaint Docket No. 3026, overruling demurrers and ordering appellants to file answers in the case of Cliveden Improvement Association and United Business Men's Association v. Philadelphia Rapid Transit Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.  Reversed.

From the record it appeared that a complaint was made before the Public Service Commission by Cliveden Improvement Association et al., against the Philadelphia Rapid Transit Company, which was subsequently joined in by United Business Men's Association: The complaint set forth that the rental received by the companies leased by the Philadelphia Rapid Transit Company was unjust and unreasonable and prayed the Public Service Commission to reduce the rentals, dividends and profits received by the respondents from each other and from the Philadelphia Rapid Transit Company or any other holding or operating company, so that each of the respondents should receive annually a fair return and not more upon the property and facilities contributed to the public service.

The demurrers filed by the respondent companies averred that the Public Service Company Law conferred upon the Public Service Commission no jurisdiction over the appellant companies, for the reason that the Public Service Company Law did not deal with lessor companies, which were performing no public service, and whose status, under the lease mentioned, was fixed prior to the passage of the Public Service Company Law of July 26, 1913, and that to take cognizance of the complaint would violate the contract and due process clauses of the Constitution of the United States and of the State of Pennsylvania.

The Public Service Commission overruled the demurrers and filed the following order:

"This matter being before the commission upon the intervening complaint filed by the United Business Men's Association of Philadelphia against the Citizens' Passenger Railway Company, Continental Passenger Railway Company, Darby, Media and Chester Street Railway Company, Electric Traction Company, Fairmount Park and Haddington Passenger Railway Company, Frankford and Southwark Philadelphia City Passenger Railway Company, Germantown Passenger Railway

Company, Green and Coates Streets Passenger Railway Company, Hestonville, Mantua and Fairmount Park Railway Company, Lehigh Avenue Railway Company, Peoples Traction Company, Philadelphia City Passenger Railway Company, Philadelphia Traction Company, Philadelphia and Darby Railway Company, Philadelphia & Gray's Ferry Passenger Railway Company, Ridge Avenue Passenger Railway Company, Second and Third Streets Passenger Railway Company, Thirteenth and Fifteenth Streets Passenger Railway Company, Union Passenger Railway Company, Union Traction Company, West Philadelphia Passenger Railway Company, Chester and Philadelphia Railway Company, Darby and Yeadon Street Railway Company, Peoples Passenger Railway Company, Market Street Elevated Passenger Railway Company, Philadelphia and Willow Grove Street Railway Company, Catherine and Bainbridge Streets Passenger Railway Company, Doylestown and Willow Grove Street Railway Company, Seventeenth and Nineteenth Streets Passenger Railway Company, Empire Passenger Railway Company and demurrers thereto, and the matters involved having been carefully considered by the commission;

"Now, to wit: July 26, 1920, it is ordered; That the demurrers filed by the several respondents in this proceeding be and the same are hereby overruled and the said respondents directed to file answers to the complaint within ten (10) days from the date of the service of this order;

"And it is further ordered: That a time for hearing upon the complaint and answers be fixed in September, when the commission will proceed to hear, investigate and duly consider all matters put in issue by the complaint and answers."

*Error assigned* was the order of the commission.

*Owen J. Roberts,* and with him *Dimner Beeber, Henry P. Brown, Joseph J. Brown, Joseph Gilfillan, Edward*

*Hopkinson, Jr., Joshua R. Morgan, Prichard, Saul, Bayard & Evans, John J. Sullivan,* and *David Wallerstein,* for appellants.—The appellant companies are not "doing business" within the meaning of the Public Service Company Law and are not, therefore, within the scope of that law: Article I, section 1, and article V, section 1, of Public Service Company Law; Galena M. & S. Co. v. Frazier, 20 Pa. Superior Ct. 394; City of Pittsburgh v. Pittsburgh Rys. Co., 8 Pa. Corp. Rep. 441; Pinkerton v. Traction Co., 193 Pa. 229; Moser v. Phila., H. & P. R. R. Co., 233 Pa. 259; McCoach v. Minehill & Schuylkill Haven R. R. Co., 228 U. S. 295; Kaufman v. Kaufman, 222 Pa. 58; Grace Contracting Company v. Ry. Co., 259 Pa. 241; Blue Valley Creamery Company v. Zimmerman, 60 Pa. Superior Ct. 278.

The act confers no power upon the commission to regulate the compensation charged for other than a public service: Article V, section 3, article II, article III, article V, section 2, Act of Assembly, 1913, P. L. 1374.

The right to receive the rentals fixed by the lease-contracts is a vested right which is expressly protected by the act: Penna. Utilities Co. v. Lehigh Navigation Electric Co., 254 Pa. 289.

The relief prayed for would violate the contract and due process clauses of the state and federal Constitutions: Re Indianapolis Traction & Terminal Co., P. U. R. 1919-A, 278; In re Contract of City of Philadelphia with Philadelphia Rapid Transit Company, 7 Pa. Corp. Rep. 125.

These appeals are not premature, and this court has jurisdiction: Franke v. Johnstown Fuel Supply Co., 70 Pa. Superior Ct. 446; Fayette County Gas Co. v. Public Service Commission, 70 Pa. Superior Ct. 472; section 17 of article VI, of the Public Service Company Law, as amended by the Act of June 3, 1915, P. L. 781; article VI, section 30, of the same, as amended by the Act of June 3, 1915, P. L. 781.

*Berne H. Evans,* and with him *John Fox Weiss,* for the Public Service Commission.—This court has no jurisdiction to entertain appeals such as these from interlocutory orders of the commission: Article VI, section 13, Public Service Company Law, article VI, section 25, of the same act.

The appellants are public service companies doing business in this Commonwealth and subject to investigation by the commission.

The power to lease or contract does not authorize the transfer of responsibility for the exercise of all powers granted to the underlying companies by the State so that they could accomplish the purposes for which they were incorporated: Chicago & N. W. Ry. Co., 113 U. S. 424; In re N. Y. L. & W. R. R. v. W. R. R. Co., 99 N. Y. 12; Singleton v. Southwestern R. R. Co., 70 Ga. 464; Nelson. v. Vermont R. R. Co., 26 Vt. 717; Balsley v. St. Louis, etc., R. R. Co., 119 Ill. 68; Logan v. R. R. Co., 116 N. C. 946; McCabe's Adm. v. Marysville & B. S. R. R. Co., 66 S. W. 1054; Nugent v. Boston, etc., R. R., 80 Maine 62; Haves v. Northern Pac. Ry. Co., 74 Fed. 279.

The appellants have not been authorized to lease their properties and franchises so as to relieve them from their charter obligations and statutory duties, and they are therefore subject to investigation by the State and to such orders as the commission may find necessary, to force them to comply with these obligations.

*C. Oscar Beasley,* and with him *Wm. A. Magee,* for the United Business Men's Association, intervening appellee.—A corporation, the creature of the State, is not greater than its creator: Pearsall v. The Great Northern R. R., 161 U. S. pp. 646-75; Slate Belt Electric Street Ry. Co. v. Public Service Commission, 73 Pa. Superior Ct. 493; Leiper v. The B. & O. R. R. Co., 262 Pa. 328.

Appellants are "doing business" within the meaning of the Public Service Law: Article I, section 1; article V, section 10, of the Act of Assembly, July 26, 1913, P.

L. 1374; Citizens Elect. Illm. Co. v. Lack. & W. V. R.
R., 255 Pa. 176-182.

This court is without jurisdiction and the ᵗs
should therefore be quashed: Arnold v. Russ. /
Plough Co., 212 Pa. 303; St. Clair Borough v. Tan.
& P. E. Ry., 259 Pa. 462; Wilkinsburg Borough v. 'I.
Public Service Commission, 72 Pa. Superior Ct. 424;
Borough of Edgewood v. Ry. Co., 110 Atl. Reporter 926.

OPINION BY HEAD, J., December 10, 1920:

In September, 1919, a number of citizens of Philadelphia, who had associated themselves under the name Cliveden Improvement Association, filed with the Public Service Commission a complaint against the Philadelphia Rapid Transit Company. The substance of this complaint was that the transit company, in possession of all of the property in the City of Philadelphia devoted to the service of the transportation of passengers, was seeking to have its rates of fare increased, when such increase was not necessary. It desired the Public Service Commission to prescribe a five-cent fare, with universal free transfers in all sections of the city, etc. Further that an order should be made directing the respondent-operating company to set aside a certain sum annually for the proper maintenance or renewal of the facilities of the company, necessary to enable it to render adequate public service. Still further, that the company be ordered to expend the sum of one million dollars yearly on extensions, until all portions of the city could receive what was considered adequate public service. An answer was filed by the operating company and a replication thereto in which the complainant asked and obtained leave to withdraw certain paragraphs of its original complaint.

In February, 1920, another association of citizens under the name of the United Business Men's Association presented a brief petition for leave to intervene in the proceeding already recited. Leave having been

granted, the intervener filed a new complaint, the substance of which may be thus stated. It alleged the apparent inability of the respondent-operating company to render adequate service at reasonable rates resulted from the fact that it was but the lessee of most of the property it operated and that by reason of the terms of the underlying leases, through which it obtained possession and control of the property dedicated to the public service, it was compelled to pay exorbitant rentals to the underlying companies, who were the real owners of the property. The prayers of this complaint were that the commission should inquire into the fairness of the terms of these agreements or leases, and, if necessary, to reduce the rentals therein provided for, to such an extent that each of the owners of the underlying properties, which had years ago been gathered together and welded into a single property, should receive only a fair return and no more, without regard to the obligations of the contracts of lease as they were originally made by the parties legally authorized to make them.

From the exhibits attached to the complaint and from the record generally, we learn there were thirty distinct and separate owners of the property, which as a whole is now operated by the Philadelphia Rapid Transit Company. This complaint by the intervener resulted in a summons from the Public Service Commission requiring these thirty separate corporations, not theretofore parties to the proceeding, to appear and answer the complaint. They did appear and filed an answer in the nature of a demurrer, challenging the right and power of the Public Service Commission to make any such order as was prayed for by the complainant, and asking that as to them the complaint should be dismissed. The Public Service Commission in July, 1920, filed an order overruling the demurrers, directing the respondents to file answers to the complaint within ten days and fixing a time for a hearing when the commission would proceed to investigate and consider all matters put in issue

by the complaint and the answers. From that order of the commission, twenty-one of the corporations affected thereby took an appeal to this court, and an order of supersedeas maintained the status until the appeals could be considered and disposed of. When they came on to be heard on a single set of paper-books—as the questions involved in each appeal were identical—a motion was made at bar to quash all of these appeals on the ground that the order of the commission complained of was not a final order and therefore furnished no foundation upon which the appeals could rest. The motion was seriously pressed by counsel for the commission and the intervening appellee on the ground that the question had been ruled by the Supreme Court in disposing of the appeal from the judgment of this court in the case of Franke v. Johnstown Fuel Supply Company, 70 Pa. Superior Ct. 446. It becomes necessary, therefore, at the outstart to consider and dispose of these motions. A similar motion on the same ground had been urged upon this court at the argument of the case just cited. In denying the motion the opinion of our brother HENDERSON clearly pointed out that the language of section 17, of article VI, of the Public Service Law expressly authorized "Any party to the proceedings affected by the filing of any finding or determination by the commission, might appeal, originally to the Court of Common Pleas of Dauphin County, now to the Superior Court." Considering that section alone, nothing could be added to the reasoning of the opinion cited to show that the words of the statute clearly authorized an appeal from such an order as that of which the appellants now complain. We think, however, the force of the reasoning of the opinion will be increased by some other considerations to which we shall now advert. The statute furnishes intrinsic evidence it was drawn with skill and care, after a study of the Public Service Laws of other states, that had been enacted prior to 1913. When we turn to section 30 of the same article VI, it becomes

quite apparent the draftsman of the act was not oblivious of the difference between the expressions "any finding or determination by the commission," which furnished the foundation for an appeal from the commission to a court of law; and the further provision for an appeal to the Supreme Court from any "final judgment, order or decree" of that court of law. If we keep in mind that the Public Service Commission is an administrative body, invested with great power for the protection of the public in supervising and controlling the service, the rates, etc., of public service companies; and that the performance of its duties and the proper execution of its powers may frequently invite and demand investigations that will necessarily consume long periods of time, we can readily understand why the legislature allowed an appeal to a court of law from any order or decree of that body, so that if the order indicated its investigation would be conducted along lines that would probably, if not necessarily, lead it to conclusions that could not thereafter be sustained upon appeal to a court of law, the mistake might be speedily corrected.

If then we confine our attention to the language of the statute, the right of appeal to this court from the order complained of would seem to be undeniable. A glance at the nature and probable effect of the order in question must strengthen the conclusion that we have before us an appealable order. Some two or more years ago, a large number of complaints was filed before the commission by the City of Pittsburgh, and by citizens and boroughs of Allegheny County against the Pittsburgh Railways Company, an operating company; against the Philadelphia company, the owner of the stock of the operating company, but not itself engaged in the business of transportation, and against a number of underlying companies in like situation, the owners of smaller street railway properties, the possession and control of which, by virtue of leases or other agreements, had passed to and become vested in the operating company,

the Pittsburgh Railways Company. The commission, having brought in all of the parties named, as they here seek to do, proceeded to an investigation which it declared in its report involved eighteen months of time, the taking of "several thousand typewritten pages" of testimony and the reports "of corps of experts and assistants." To what end? Let the report speak: "The Philadelphia Company on July 19, 1917, filed an answer admitting that it was a holding company owning the entire capital stock of the Pittsburgh Railways Company and a part of the capital stock and other securities of other companies which were named as respondents; but it denied that it was engaged in the street railway service, or that it was subject to the jurisdiction of this commission and prayed that as to it the complaint might be dismissed. The evidence discloses that the facts are as alleged in the answer, and the complaint as to the Philadelphia company must therefore be dismissed. The rates under attack are solely those of the respondent [Pittsburgh Railways Company]. All the other companies named are not engaged in public service. Their properties have passed into the operating control of the Pittsburgh Railways Company and they have ceased to function as common carriers. Their authority to turn over their public responsibilities and cease to render public service, is found in the provisions of the acts of the General Assembly of Pennsylvania. If they be subject to the jurisdiction of this commission, that jurisdiction cannot be predicated on any of the allegations contained in the complaints under consideration."

A forward order of the commission, fraught with such consequences, ought to be subject to review by a judicial body at the earliest possible moment, so that unnecessary waste of time, money and effort be avoided.

Such a construction of the statute would be in harmony with the trend of modern legislation in Pennsylvania, and the decisions of our courts. Appeals from the entry or the refusal to enter judgments for want of

a sufficient affidavit of defense, from the granting or refusal to grant a preliminary injunction; for a prompt disposition of a challenge to the jurisdiction of a court of equity; from a decree for the payment of alimony pendente lite et id omne genus are familiar illustrations of this tendency. The reasoning of the opinion of Mr. Justice MOSCHZISKER in Germantown Trust Company v. Powell, 260 Pa. 181, is quite persuasive on the proposition we are now considering. If it be said statutes were required to sustain such appeals, we have before us a statute in terms authorizing an appeal from any order of the Public Service Commission and are but stating reasons for the construction of it we adopt.

The Public Service Law of West Virginia allows an appeal to the Supreme Court only from "a final order" of the commission. In City of Charleston v. Public Service Commission, 99 S. E. Rep. 63, that court in distinguishing, if not reversing, an earlier judgment or decree, said: "We are of the opinion that the legislature in the use of this term [final order] meant to cover all such orders as changed the position of the parties, as took from one and gave to the other something that he was not entitled to and could not receive before. If we do not give the statue this construction, then the Public Service Commission may by these provisional or experimental orders put its actions, in most cases, beyond the review of this court for such a period of time as would make the relief of little value when it was finally obtained." Thus it appears from every point of view the obvious lines of reasoning all converge to a single conclusion. All of these considerations, however, are brushed aside by the learned counsel for the intervening appellee and the commission by the flat statement that the question has been decided in Franke v. Johnstown Supply Co. (supra) and is no longer debatable. We do not so read the brief opinion. It declares the order of the commission then in question was not a final one. Nobody contends otherwise. The order of this court

which took the record back to the commission was in the nature of a procedendo in a common law action. The Supreme Court did not say, and we believe did not intend to say that no appeal from such an order could be taken to this court, or that we were in error in considering it. They did dismiss the appeals from this court to the Supreme Court as premature, presumably because the statute allowed such appeals only from the final judgment of the law court to which the appeal from the order of the commission had been taken. The inferences drawn by the appellees from the opinion cited are much broader than the language used will warrant. We therefore conclude there is no barrier in the way of our adoption of the necessary result of the reasoning we have indicated. The motions to quash are denied.

In the act creating the Public Service Commission, the legislature clearly indicated two separate and distinct ways in which its extensive powers might be called into activity. It first gave the right to any person or corporation, public service company or municipality to complain of anything done or about to be done, omitted or about to be omitted by any public service company, in violation of the terms of the act, to file a complaint before the Public Service Commission and invoke its aid to redress the grievance complained of. When a proceeding is instituted by complaint in this manner, the duties of the Public Service Commission are clearly prescribed. The public service company complained of is to have the right in the first instance to satisfy the complaint and thus conclude the proceeding. If it declines to exercise that right, then, if the commission be of opinion that a cause of action has been shown by the complaint, it proceeds to a hearing of the same and to a determination as to whether the complaint shall be satisfied in whole or in part, or be dismissed. Seemingly the legislature was not entirely satisfied that all of the benefit to the public intended by the statute would be afforded if the activities of the commission were to de-

pend entirely on the individual complaints of persons or corporations who felt themselves especially aggrieved. It therefore provided that the commission might upon its own motion, and upon such notice as it might deem reasonable under the circumstances, institute an inquiry or investigation and fix a time and place for a hearing of the subject of the inquiry, with the same effect as though a complaint had been made in the manner above recited. These two separate lines of procedure should not be confused, so that the general powers of the commission in an investigation, the scope of which it has previously determined and marked out, should be called in to eke out a complaint, which standing by itself could not be made a sufficient ground to support the relief prayed for. Living as we do under a form of government where justice is administered according to law, the orderly administration of justice is next in importance only to its honest administration. Keeping in mind, therefore, that we are dealing at present with the written complaint of the intervening appellee, and with nothing else, we proceed to a consideration of the proper exercise of the powers of the commission to be directed to the end declared by the statute, to wit: either the satisfaction of the complaint in whole or in part, or its dismissal.

So regarding our duty in the premises, it becomes at once apparent that much of the able briefs of counsel on both sides has been devoted to the consideration of broad questions far outside the lines of what we consider the real scope of the present inquiry. We are not prepared to accept as sound, the broad proposition advanced by counsel for the appellants, that the Public Service Commission has no jurisdiction over the underlying companies, the present appellants. They are existing corporations under the laws of the State of Pennsylvania. They are the final owners of a vast property, which for years has been devoted to a public service and which is to-day being operated as a public service company engaged in a service vital to the vast population which

constitutes the City of Philadelphia. They were char-
tered as public service companies, and so long as they
live and move and have their being under and by vir-
tue of those charters, they must remain public service
companies. But it does not at all follow from this state-
ment that under existing conditions, to which we shall
refer, they may at any moment be haled before the Pub-
lic Service Commission as parties respondent to a com-
plaint which either has to do with the right of the public
to have adequate service at fair rates, or which aims at
having the commission do something it has neither the
right nor the power to do. There is no denial by any-
body that the property owned by these companies and
devoted to the public service is within the regulatory
control of the commission. On the contrary everyone
concedes that the commission has under its grasp at the
present moment the whole of this property in the lawful
possession and control of the operating company. If
the commission may lawfully proceed to compel the pres-
ent possessor of that property in lawful control of it, to
respond to the just demands of the public, whence the
necessity to go back along the chain of title and bring in,
at the expenditure of much time, money and effort, every
company which has previously owned or controlled the
same property? The interest of the public, which the
Public Service Law sought to maintain and uphold, was
the right to have adequate transportation, at reasonable
rates, over the lines in the City of Philadelphia devoted
to the service, without regard to the question of the
ultimate ownership of that property. That public right
having been fairly conserved by the action of the com-
mission, of what interest is it to the public how the
revenues that may be derived from such service are to
be apportioned between the lessee operating company
and the owners of the property, the underlying com-
panies? In such complaints, as, for instance, the one
which started this proceeding, and in the like cases in-
volving the quality of the service and the quantity of

the rate, the duty of the commission is simply described, although it may be difficult to perform. The commission is to ascertain the reasonable present value of the property affected with the public service and upon that valuation is to base a rate which will produce a fair return upon the value thus established. In the case of Ben Avon Borough v. The Ohio Valley Water Company, 68 Pa. Superior Ct. 561, KEPHART, J., speaking for this court, pointed out on page 577, et seq., the reason of the rule that requires an ascertainment of the present value, that is of the time when the valuation is made, rather than a value based on original cost plus, or on the cost of reproduction. We need not repeat what was there said, being of opinion now, as we were then, that in the respect mentioned the soundness of that judgment cannot be questioned.

The commission in the performance of its duty in ascertaining a fair present value of the property affected with the public service, should not necessarily be obliged to consider the private contracts between the operating company and its lessors, the property owners. As between the parties who made them, those contracts are as secure from interference as those of other citizens. But the public was no party to those contracts, and no stipulation therein contained, for the benefit of one or the other of the parties thereto, can deprive the public of its paramount right to reasonably adequate service at a reasonably fair rate. We are advised by counsel that such is the view entertained by the commissions of other states, although the writer has not had the opportunity of verifying the citations: Re Indianapolis Terminal Co., P. U. R. 1919 A, 278, at 312; Re Utah Light Co., P. U. R. 1920 B, 262, at 270; Re Union Light Co., 6 Mo. P. S. C. 488; Washington Mills v. U. S. Ry., P. U. R. 1919 E, 638; Milwaukee Electric Co. v. Milwaukee, P. U. R. 1919 D, 504, at 536. To say that the state has power to accord to the public right precedence over the contractual rights of parties would be to assert no new

doctrine, any more than it could be said that the state was violating or impairing a private contract of mortgage when it made the public taxes a lien ahead of the lien of the mortgage. So in a long line of cases we need not repeat, it has been held that contracts between individuals and public service companies, or between public service companies inter sese, are not impaired when it is found that they interfere with the rendering of equal and adequate service by public service companies, and when, because of such interference, they are compelled to give way to the superior right of the public to have such service.

The contracts in question, therefore, as we view it, cannot be directly attacked before an administrative body, with the avowed end of having the rentals therein provided for reduced to such a sum as the Public Service Commission may determine should have been the rentals provided for. A very learned and able argument was advanced by one of the counsel for the intervening appellee to prove that all, or nearly all, of these leases were absolutely void because the makers of them, themselves being lessees, had exceeded their lawful power in fixing the terms of the lease. Such an argument might well be addressed to the highest court in the land and it seems manifest that a decree, striking down these leases on the purely legal grounds advanced in the argument, would be an exercise of the highest judicial power and authority. We are unable to perceive how it can be seriously urged that upon the complaint pending before the commission, that administrative body could be successfully asked to enter a judicial decree of the magnitude and character indicated. As we said in the outstart, the Public Service Commission has ample power, in the judgment of this court, without doing violence to any established legal principles or orderly method of procedure, to compel the rendition of adequate service at fair rates over the property owned by the appellant companies, and there may come a time

when without attempting to overstep its power, it may with propriety take action, the result of which would very seriously affect the rentals under the contracts in question. But as we view the case, no ground is presented here for the action of the commission sought for in the complaint filed.

Again the record is barren of any evidence that the present operating company will not be able to respond to any reasonable order that may be made by the commission with reference to the service to be rendered or the rates to be charged therefor. The intervener has no right to assume that such a situation will arise and the commission should not regard such assumption as a fact. If it so be that the operating company can and does respond to the orders of the commission and can and does furnish the reasonable service required at the rates that may be fixed, to what end, we ask, must these underlying, nonoperating companies, be now brought into this investigation at heavy expense both in time and in money? We are unable to perceive that the order complained of was in any wise necessary to enable the commission to perform its clearly prescribed duties, and if unnecessary it is oppressive and therefore unreasonable.

We may add the records of the Public Service Commission are public records of which the courts may take judicial notice. In this way we learn there is pending before the commission a complaint of the City of Philadelphia against the Rapid Transit Company having for its object the ascertainment of a just valuation of the property in the possession and control of the operating company, whether acquired by virtue of the leases in question, by its own construction or by acquisition from other sources than the underlying companies. The preliminary report of the commission in that proceeding— 6 Department Rep., p. 2395, declares: "The Philadelphia Rapid Transit Co. has been directed to file with the commission an inventory of all of its property in

order that the commission may determine the fair value of its used and useful property as a basis for the proper, permanent rate base." It might be fairly hoped that with the termination of that proceeding, the necessity for numerous and sporadic complaints by individual citizens or aggregations of citizens would no longer be necessary. We are of opinion the order complained of was unreasonable and unnecessary and that as to the present appellants, the complaint of the intervening appellee should have been dismissed.

A similar order to the one we now enter will be made in each of the other appeals referred to.

The order of the Public Service Commission appealed from is reversed and set aside, and the record is remanded to the commission with direction that as to these appellants the complaint be dismissed at the costs of the intervening appellee.

DISSENTING OPINION BY KELLER, J.:

I think this appeal should be quashed as the order to answer is not such a finding or determination as may be appealed from.

A finding or determination which may be appealed from to this court under section 17 of article VI of the Public Service Company Law, as amended by Act of July 11, 1917, P. L. 808, is, in my opinion, such a finding or determination as is prescribed in section 10, article VI, of that act, which provides: "Whenever the commission shall investigate any matter complained of, under the provisions of this act, it shall be its duty to make and file of record a written finding, determination or order, either dismissing the complaint or directing the public service company or companies complained against to satisfy the cause of complaint, in whole or to such extent and within such time as the commission may specify, require and order."

The intervening sections provide for the making and filing of such a written finding, order or determination

in hearings instituted by the commission on its own motion (section 11); for the rescinding or modification of such findings or determinations, and rehearings for cause shown (section 12); for the service of such final orders on public service companies (section 13); for applications for rehearing by any public service company or municipal corporation affected, or any party complainant, etc., in respect to any matter determined by the commission and order issued therein (section 14); which shall not operate as a supersedeas or stay the enforcement of the original order, except as the commission by its order may direct (section 15); that after such rehearing, the commission may affirm, rescind, modify or amend its original order (section 16); and then provides in section 17, as amended, for an appeal to this court within thirty days after the filing of any finding or determination or the date of service of any order.

It seems clear to me that the finding, determination or order which may be thus appealed from is one which either (1) dismisses the complaint, or, (2) directs the public service company complained against to satisfy the cause of complaint in whole, or, (3) orders satisfaction to such extent, etc., as the commission may specify, require and order; and does not include a mere preliminary order directing a public service company to file an answer.

I do not hold that the appeal is limited to a final order or judgment as understood in a court of law, viz: one which puts an end to the action, but that it must be such an order as dismisses the complaint or requires a public service company to do something by way of satisfying a complaint and not one that merely directs it to answer in accordance with the procedure provided for by the act.

The Public Service Commission is not a court. No provision is made in the act for demurrers, which belong solely to the procedure in courts. When a com-

plaint has been filed against a public service company, it is its duty to satisfy the complaint, or answer the same in writing (article VI, section 6), and that means just what it says—answer. A demurrer is not an answer and is not contemplated by the act. The commission in this instance has only ordered the respondent company to do what the act says it shall do under such circumstances, viz: answer the complaint and proceed to a hearing.

There is nothing in the act which leads to the conclusion that the Superior Court is to be a sort of advisory body to the Public Service Commission, to which may be referred by appeal any interlocutory order of the commission for advice and counsel during a hearing. The act provides that the attorney general and the counsel selected by him, shall be the advisers of the commission (article IV, section 6). The province of this court is wholly appellate, not advisory, and, it comes into operation only when the commission has made such an order, finding or determination as is provided for in article VI, section 10.

Nor does that section of the act which provides for an appeal to the Supreme Court, from any final judgment, order or decree of this court (article VI, section 30) lead to a different conclusion or give rise to an inference that the term "final" was used therein to mark a distinction from the finding or determination which may be appealed from to this court. A reference to section 24 of the same article will show why the term "final judgment, order or decree" was used in connection with appeals from this court to the Supreme Court.

By section 24, it is provided that this court on appeal from any order, finding or determination of the commission may do one of three things: (1) If the order appealed from is found to be reasonable and in conformity with law, we are to dismiss the appeal and affirm the order; (2) If we find the order is unreasonable, based upon incompetent evidence or not in conformity with law, we may enter a final decree reversing the order of

the commission; or, (3) we may remand the record to the commission with directions to reconsider the matter and to make such order as shall be reasonable and in conformity with law.

It is clear that (1) an affirmance of the order of the commission and (2) a flat reversal of such an order are both final decrees, while a decree remanding the matter to the commission for further consideration is not final. From either of the first two, an appeal may be taken to the Supreme Court; from the third, it may not. The effect of the term "final" as used in section 30 is, therefore, to provide that a decree of this court remanding a case to the Public Service Commission for further consideration and action is not such a judgment, order or decree as may be appealed from to the Supreme Court.

The construction above is in strict conformity with the opinion of the Supreme Court in Peoples Natural Gas Co., Appellant, v. Public Service Commission, 268 Pa. 235; (see Franke v. Johnstown Fuel Supply Co., 70 Pa. Superior Ct. 446); that of the majority of the court, I submit, is not. The Supreme Court in dismissing that appeal did not do so because the order of this court was not final within the contemplation of the act; it was, for it affirmed the order of the commission. The Supreme Court dismissed the appeal in that case as premature because there was no "final finding and determination by the commission of the matter complained of," since the commission had neither dismissed the complaint nor directed the public service company to satisfy the cause of complaint in whole or in part, but only overruled respondent's "demurrer" and ordered it to file a tariff and schedule of rates.

When an answer has been filed, the commission will hear the matter and may dismiss the complaint or direct the respondent to satisfy it in whole, or to such extent as the commission may deem proper, and from such an order an appeal may be had to this court. Nor is the commission limited to the precise relief prayed for in

the complaint. It may grant other relief if germane to the proceedings instituted. We do not now know what may be developed upon such hearing.

This is the orderly course of procedure and it causes a respondent no more hardship than is visited upon any litigant in a court of law who files a motion to set aside service of process or a plea in abatement, which is overruled; he can in such case take no appeal until a final judgment is entered.

If an appeal will lie to this court from every order, finding or determination of the commission, however interlocutory in character, a public service company in the hands of astute counsel may postpone and prolong a hearing so that a final order or determination as contemplated in article VI, section 10, will be beyond the reach of almost every individual complainant. Such a course was never contemplated by the framers of the act.

For the above reasons, I would quash the appeal, and therefore am constrained to enter my dissent.

HENDERSON, J., joins in this dissent.