Philadelphia Rural Transit Co., Appellant, *v.* Philadelphia et al.

Argued January 6, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Boyd Lee Spahr,* of *Ballard, Spahr, Andrews & Ingersoll,* with him *Allen Hunter White,* for appellant.—It has been well settled in Pennsylvania for upwards of a hundred years that certain kinds of corporations which are affected with a public interest and have a duty to

serve the public, are exempt from local real estate tax: Lehigh Coal, etc., Co. v. County, 8 W. & S. 334; Conoy Twp. v. Power Plant, 222 Pa. 319; Pitts., Allegheny, etc., Ry. v. Twp., 252 Pa. 149.

Appellant is within the class of corporations entitled to exemption: Coatesville Gas Co. v. Chester County, 97 Pa. 476; Phila. Elec. Traction Co., 208 Pa. 157; Erie County v. Transportation Co., 87 Pa. 434; Conoy Twp. v. Power Co., 222 Pa. 319; McNulty Bros. v. R. R., 272 Pa. 442; McKelvey v. Gumbert, 28 Pa. Dist. 1026; Tracy v. Harrisburg, 24 Pa. Dist. 909; Del. & Atlantic Tel. & Tel. Co. v. Chester, 19 Pa. Dist. 976.

The property for which exemption is sought is necessary and essential: Phila. v. R. R., 1 Pa. Superior Ct. 236; Lehigh Coal, etc., Co. v. County, 8 W. & S. 334; Luzerne County Gas & Elec. Co. v. Morgan, 63 Pa. Superior Ct. 64; Phillips Gas & Oil Co. v. County, 51 Pa. Superior Ct. 158; Pittsburgh v. Gas Co., 34 Pa. Superior Ct. 234; New York & Erie R. R. v. Sabin, 26 Pa. 242; Phila. v. Electric Traction Co., 208 Pa. 157.

The second conclusion of law of the court below to the effect that appellant does not possess the right of eminent domain is immaterial. Such power is not a prerequisite to the right of exemption: Penna. Tel. Co. v. Hoover, 209 Pa. 555; Bell Tel. Co. v. Harrisburg, 53 Pa. Superior Ct. 458; Northampton County v. Ry., 148 Pa. 282.

*Theodore F. Jenkins,* with him *Mayne R. Longstreth,* Assistant City Solicitor, and *Augustus Trask Ashton,* City Solicitor, for appellees.—The words "lands, houses and lots of ground" do not include quasi public corporations: Schuylkill Bridge Co. v. Frailey, 13 S. & R. 422; Allegheny County v. Diamond Market, 123 Pa. 164; Adams Express Co. v. Harrisburg, 254 Pa. 443; Pittsburgh's App., 123 Pa. 374.

If the name of the quasi public corporation is included in local taxing acts, for instance, as railroads, the va-

rious items of its essential property may be separately taxed as included in the word real estate: Phila. v. Traction Co., 206 Pa. 35; P. R. R. v. Pittsburgh, 104 Pa. 522; Balti. & Phila. Steamboat Co.'s App., 302 Pa. 364.

Appellant has neither of the essentials of a quasi public corporation, that is to say, it has neither the powers and franchises of such a corporation nor a system of real estate connected by rights-of-way, underground wires or pipes or overhead wires needing protection from tax sale to preserve unity of system.

The general offices of a railroad or transportation company are taxable: Schuylkill Navigation Co. v. Berks Co., 11 Pa. 202; East Pa. R. R. Co.'s Case, 1 Walker 428; Erie County v. Transportation Co., 87 Pa. 434.

The payment by appellant of a state tax on its capital stock can have no bearing on the question of the liability of its real estate to local taxes thereon: Schuylkill Bridge Co. v. Frailey, 13 S. & R. 422; Lackawanna Iron Co. v. County, 42 Pa. 424.

Appellant's possession of a certificate of public convenience from the Public Service Commission of Pennsylvania does not make it a quasi public corporation and entitle it to freedom from taxation: Balti. & Phila. Steamboat Co.'s App., 302 Pa. 364.

OPINION BY MR. JUSTICE MAXEY, March 14, 1932:

The Philadelphia Rural Transit Company, a common carrier in motor busses of passengers for hire, appeals from the action of the court below dismissing its bill seeking to restrain the defendants from collecting taxes for city and school purposes levied upon appellant's property located in Philadelphia. This property is used for offices for carrying on appellant's business; for the storage, maintenance and inspection and repair of motor busses; and for the storage of bus chassis, parts of oil burners, tool boxes, winter fronts for busses, filing rec-

ords, supplies and equipment. A driveway in daily use for appellant's omnibuses is included in the property the assessment of which is complained of. The appellant is incorporated under the Act of 1874. It operates as a common carrier under a certificate of public convenience from the public service commission. It pays a capital stock tax to the Commonwealth on all of its capital, including its investment in the property described.

The court below reached the conclusions in law that the appellant "is a private corporation not possessing the right of eminent domain or other governmental function or delegated right of sovereignty entitling it to exemption from taxation" and that its real estate upon which the challenged tax has been levied "is subject to taxation under section 32 of the Act of April 29, 1844, P. L. 486," reading in part as follows: "That from and after the passage of this act, all real estate, to wit: houses, lands, lots of grounds and ground rents, mills and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries and ferries, wharves and all other real estate not exempt by law from taxation,....shall be valued and assessed and subject to taxation for the purposes in this act mentioned, and for all state and county purposes whatsoever."

The Act of August 25, 1864, P. L. 1930, provides: "That the Select and Common Councils of the City of Philadelphia shall have the power to levy a tax for municipal purposes, on all subjects of taxation, specified by the thirty-second section of the Act of April twenty-ninth, one thousand eight hundred and forty-four, and to provide by ordinance a system for the assessment thereof, and for the collection of taxes thereon."

The Act of May 18, 1911, P. L. 309, provides: "In all school districts of the first class in this Commonwealth, the school taxes shall be levied and assessed upon the same property as that upon which the municipal taxes

of the municipality comprising such school district of the first class [of which Philadelphia is one] are levied and assessed."

All buildings used for housing motor cars in the City of Philadelphia are assessed and taxed under these laws whether owned by individuals, partnerships or corporations.

Appellant's contention is that its real estate above referred to is not subject to city and school taxes under these or any other statutes, that the real estate of a motor bus company which is essential to that company's business of carrying passengers for hire is exempt from local taxation exactly as is real estate of a railroad company which is essential to that company's business of carrying passengers for hire.

The policy and law of this Commonwealth in respect to local taxation of the property of a public or quasi public corporation essential to the exercise of its corporate franchises is clearly expressed by this court in an opinion by Mr. Justice ELKIN in Conoy Twp. v. York Haven Co., 222 Pa. 319, as follows: "It has been uniformly held in Pennsylvania that the real estate of a public or quasi public corporation, essential to the exercise of its corporate franchises, is not subject to local taxation in the absence of legislative authority imposing such taxes. The power to tax necessarily includes the power to sell for nonpayment of taxes, and thus the property of a public corporation, without which it could not perform its duties to the public, could be sold piecemeal and the corporate purpose be defeated by divesting the title to certain portions of the real estate against which tax liens were filed. Again, many quasi public corporations extend into and through different municipalities, and as a question of public policy it has not been deemed wise to subject them to the exactions of the taxing officer at every municipal division line but rather to authorize the Commonwealth to impose a capital stock tax upon such corporations, and in appraising

the same for the purpose of taxation, the real estate, franchises, earning power, dividends and all other matters which affect the value thereof, must be taken into consideration...... It is settled in this State that the words 'real estate' in our taxing statutes do not include lands or appurtenances essential and necessary to the exercise of the franchise of a public corporation: Lehigh Coal & Navigation Co. v. Northampton County, 8 Watts & Sergeant 334."

The consideration of this and similar opinions of this court in cognate cases makes it clear that the only corporations whose real estate essential to the exercise of their franchises is not subject to local taxation, in the absence of legislative authority to impose such tax, are those corporations whose business is so important to the well-being of the public that it may justly be considered as being in the nature of the carrying on of a public duty, with which the sovereign will not permit any local subdivision of government to interfere by taxation. "The power to tax involves the power to destroy" Chief Justice MARSHALL said in M'Cullough v. Maryland, 4 Wheat. (U. S.) 316.

Fletcher, Cyc. of the Law of Corporations, perm. ed., volume 1, page 215, section 63, says: "Quasi public corporations have been defined as private corporations which have accepted from the State the grant of a franchise or contract involving the performance of public duties. A quasi public or public service corporation has been defined also as one private in its ownership but having an appropriate franchise from the State to provide for a necessity or convenience of the general public incapable of being furnished through the ordinary channels of private competitive business, and dependent for its exercise upon eminent domain or some agency of government: 101 N. E. 1061. It is not the primary franchise to be a corporation, conferred on the incorporators, but the secondary franchise, conferred on the corporation which brings it into this class."

Thompson on Corporations, 3d ed., volume 7, section 5871 says: "The true test is whether it [a corporation] is engaged in the administration of a public trust with power to take land for that purpose. It is the character of the use to which the property is put and not of the person who uses it that settles the question of the exemption from taxation."

In 14 C. J., page 76, section 46, it is said: "Corporations do not come within this class [quasi public corporations] where they are purely private undertakings and are not given the power of eminent domain, or other special privileges or franchises, although in a sense their undertaking or business may be of a public character."

In 7 R. C. L., page 41, section 15, it is stated: "A quasi public corporation may be said to be a private corporation which has given to it certain powers of a public nature, such for instance as the power of eminent domain, in order to enable it to discharge its duties for the public benefit, in which respect it differs from an ordinary private corporation, the powers of which are given and exercised exclusively for the profit or advantage of its stockholders."

The possession of the power of eminent domain is not what gives a corporation a quasi public status for there are quasi public corporations that do not possess this power; rather the fact that a corporation is quasi public is what entitles it to a grant of the power of eminent domain when the exercise of its functions requires it.

The conferring upon a corporation by the State of the power of eminent domain is an official recognition of the fact that the corporation receiving this grant of power is engaged in a business so vital to the public welfare that it is really engaged in the administration of a public trust, and therefore it is entitled to the classification of a quasi public corporation and the property essential to the administration of that trust is exempt from all taxation except that imposed directly by the sovereign.

This court said in Pittsburgh's App., 123 Pa. 374: "It may be somewhat difficult to define what is a public work or a public corporation in this sense but it is clear that one of the characteristics is that it has the right of eminent domain, that it has franchises which justify the legislature in defining or considering it public. A mere private corporation needs no franchise from the State in order to carry on its business. Men may manufacture shoes without corporate power, but they cannot occupy streets or property of private individuals without corporate power or warrant from the State. They need a delegation of sovereignty and in such cases their works may be properly called public works. In the class of cases in which the double taxation here sought is inhibited, it will be found that this is one of the characteristics."

This court said in McLeod v. Central Normal School Assn., 152 Pa. 575: "In order that a private corporation may be regarded as quasi public, it must exist directly for the public use; the corporate franchise must be such as is held in the nature of a public trust, and such that the public has standing to assert and enforce its right. ...... Whilst eminent domain is ordinarily an attribute of such a corporation, it is not essential that it shall be given that right. It must be a corporation of a public nature independently of any grant of eminent domain."

Appellant quotes from that case that if the public can use the property of the corporation "by right" and not merely "by permission," "then the property of the corporation may be said to be in the direct use of the public at large, though under the control of private persons or of a corporation. It is not so much a question of what public service the corporation is actually performing as what public services it must perform." In that very case this court held that though "the State has at last taken firm hold of these institutions [normal schools]" and placed them "wholly within the control of the State,"

yet normal schools were not performing such public functions "directly in the public interest, under the law," as to make them quasi public corporations. Our court said further in that case that "it is certainly true that the work of training teachers, like the work of an academy or a college, may be conducted with or without a charter of incorporation."

The requirement that a corporation must maintain adequate service for the accommodation and safety of its patrons cannot be accepted as proof of its quasi public character. That the State regulates a business does not mean that the State gives it official recognition as vital to the public welfare. Private corporations are regulated by the State to far greater extent now than they were in 1893, when the above cited opinion was written. If every corporation that must perform public service as it is set forth in the public service law of 1913 is to be classed as quasi public and therefore entitled to exercise the power of eminent domain and to be exempt from local taxation on its essential property, the result would be so obviously opposed to public interest as to forbid judicial acceptance of that formula. The implications of this doctrine are that all public service companies as defined by the Public Service Law are quasi public corporations. This doctrine becomes further patently unacceptable when it is realized that under the public service law not only corporations engaged respectively in twenty-six different kinds of businesses but also *persons* engaged for profit in the same kinds of business are expressly included in the term "public service company." All these varieties of corporations and also all persons engaged in the same kinds of business are equally subject to the duties and liabilities of public service companies as set forth in article II, section 1, of the public service company law, as follows: "It shall be the duty of every public service company: To furnish and maintain such service, including facilities, as shall in all respects be just, reasonably adequate,

and practically sufficient for the accommodation and safety of its patrons, employees, and the public, and in conformity with such reasonable regulations or orders as may be made by the commission."

Appellant's proposition that it is a quasi public corporation because it is a common carrier, that it is engaged in a business affected with a public interest and under a duty both by statute and by common law to serve the public impartially as a carrier, leads to conclusions that reveal its basic unsoundness. A corporation which operates a public inn is under a duty to serve the public impartially, and as the phrase "affected with a public interest" has in recent years been applied to much wider fields of business than heretofore, it would not be extending the phrase much further to say that a public inn is affected with a public interest. If appellant's contentions in this case were judicially accepted, there are millions of dollars worth of property whose owners with equal justice could claim that it was affected with a public interest and was therefore exempt from local taxation.

That all "common carriers," as the term is used in the Public Service Company Law are not ipso facto quasi public corporations, as is apparently implied in appellant's contention, is evidenced by the definition of common carriers in this act as follows: "The term 'common carrier,' as used in this act, includes any and all common carriers, whether corporations or persons, engaged for profit in the conveyance of passengers or property, or both, between points within this Commonwealth, by, through, over, above or under land or water, or both." It follows that if the essential property of all common carriers is exempt from local taxation, then the essential property of all *persons* lawfully engaged in the conveyance of persons or property for profit within points in this Commonwealth would be likewise exempt. A livery stable owned by a man who shelters therein horses and busses used by him in the duly permitted transpor-

tation of passengers for hire would under appellant's theory be exempt from local taxation.

The possession of a certificate of public convenience does not, as contended, make a corporation quasi public, for this certificate merely evidences the Public Service Commission's approval of the organization of a public service company and of this company's beginning the exercise of any right, power, franchise or privilege under any ordinance, municipal contract or otherwise. The issuance of this certificate is in the nature of a license to organize and do business rather than, like the conferring of the right of eminent domain, official recognition by the Commonwealth that the corporation is performing service of such vital importance to the public that it is virtually engaged in the administration of a public trust.

The argument that an omnibus company is entitled to the same tax exempting privileges on its essential property as a railroad company because like a railroad company it is engaged as a common carrier in the transportation of passengers and property, is plausible only when superficially considered. Railroads render a service that is both important and publicly indispensable. The taking over of the railroads by the national government after this country's entry into the World War may be cited as an illustration of the federal government's view that the operation of railroads is essential to the nation's well being. The exigencies of war merely emphasized this fact. The present evident intention of the national government to extend financial assistance to railroads in this period of economic depression is another official recognition of railroads as public necessities. Omnibuses may be regarded by some as public conveniences but no one can contend that they are public necessities. With our railroads organized and equipped to handle business far in excess of the present volume, with millions of privately owned and operated automobiles, no one can contend that the suspension of all motor bus traffic would, like the suspension of all railroad traffic,

mean ecomonic disaster. The fact that the State has delegated to railroads the power which is an inherent attribute of sovereignty itself to condemn and take private property, on just compensation being made, for the railroads' use, is an official recognition of the fact that railroads are quasi public corporations whose property is devoted to a public use. No omnibus company in Pennsylvania has received any such recognition from the Commonwealth. Public use does not mean merely general convenience or advantage. Cooley on Constitutional Limitations, 8th edition, volume 2, page 1124, says: "The right of eminent domain does not imply a right in the sovereign power to take the property of one citizen and transfer it to another, even for a full compensation, where the public interest will be in no way promoted by such transfer [citing, inter alia, Mayor et al. v. Scott, 1 Pa. 309]. ...... Nor could it be of importance that the public would receive incidental benefits, such as usually spring from the improvement of lands or the establishment of prosperous private enterprises; the public use implies a possession, occupation, and enjoyment of the land by the public at large, or by public agencies. ...... The reason of the case and the settled practice of free governments must be our guides in determining what is or is not to be regarded a public use; and that only can be considered such where the government is supplying its own needs, or is furnishing facilities for its citizens in regard to those matters of public necessity, convenience or welfare, which, on account of their peculiar character, and the difficulty—perhaps impossibility—of making provision for them otherwise, it is alike proper, useful and needful for the government to provide."

In People v. Township Board of Salem, 20 Mich. 452, the court said: "The most important consideration in the case of eminent domain is the necessity of accomplishing some public good which is otherwise impracticable."

It is probably true as the Supreme Court of Missouri said in: Kansas City Ordinance No. 39,946, 298 Mo. 569, s. c. 28 A. L. R. 295, that "No satisfactory definition of the term 'public use' has ever been achieved by the courts."

In Jacobs v. Water Supply Co., 220 Pa. 388, this court held that the power to take private property for public use can be invoked only when public exigency or necessity requires the exercise of this sovereign right, and that the use of the property taken must be a public one, and that "the legislative determination of what constitutes a public use presumptively makes the purpose so declared a public use. This is only a presumption, however, and does not conclude parties from raising the question before the courts for judicial determination."

The question whether or not a corporation is quasi public is for the courts to determine on the facts of each case. A corporation cannot obtain judicial recognition as quasi public unless the service it renders to the public or a large part of it are so essential to public well-being that any interference with its functions by local administrative agencies would be insufferable to the sovereign Commonwealth. The functions of the appellant company do not bring it within this class of corporations. It is only a private corporation which does not have to possess even chartered rights, much less sovereign rights, to carry on its activities. It renders no service which cannot be furnished through the ordinary channels of private competitive business. The State has no more solicitude for its continued operation unhampered by local taxing agencies than it has for the continued activity of an individual who owns a jitney and who after receiving a certificate of public convenience engages for his personal profit in the carrying of passengers for hire.

The judgment is affirmed.